ALLIS CHALMERS CO. v. RELIABLE LODGE et al.

.(Circuit Court, N. D. Illinois, N. D. October 18, 1901.)

No. 25,976..

**1. INJUNCTION—LABOR STRIKES—UNLAWFUL CONSPIRACY.**

.    It is the undoubted right of workmen to quit work, either severally or in a body, so long as the act does not come within the rule against conspiracies to injure the property of another, and they may also, subject to such rule, use peaceable means in persuading others to join them in carrying out a strike. But such rights must be exercised in such manner as not to otherwise interfere with the right of the employer to conduct his business in a lawful manner, or with the equal right of every other man to work or not to work for such employer, as he may think best. They have no lawful right to impose the course of conduct or rules adopted for themselves upon any other man against his wishe·, and, where they attempt to do so through concerted acts of violence and intimidation, they are guilty of an unlawful conspiracy, and it is the duty of a court of equity to enjoin such acts when they inflict irreparable injury upon the employer or other workmen.

**2. SAME—ACTS OF VIOLENCE AND INTIMIDATION.**

.    Where a labor organization whose members are engaged in a strike undertakes to prevent the employer from carrying on its business by preventing other men from remaining in, or entering, its service, by systematically maintaining pickets around and about the entrances to its premises, virtually placing them in a state of siege, and it is shown that strikers and others incited by them have committed assaults upon workmen employed therein, and have employed threats and intimidation against such workmen to such an extent that the latter do not dare to leave the works through fear of bodily injury, and their employer is compelled to provide board and lodging for them within the premises, and other workmen are from the same reason prevented from entering its employment, to its irreparable injury, such state of facts clearly justifies the conclusion that the defendant organization and its members have not confined themselves to lawful methods of persuasion and argument, and that they are engaged in a conspiracy to stop the business of the employer by intimidation and violence, which entitles the employer to protection by injunction against the continuance of such unlawful acts.

**8. SAME—EQUITY JURISDICTION.**

The fact that acts committed by defendants constitute criminal offenses under a statute does not deprive a court of equity of jurisdiction to enjoin such acts, where their continuance will result in irreparable injury to property rights.

In Equity. On motion for preliminary injunction.

Pam, Calhoun & Glennon, for complainant.

Hornstein & Coith, for defendants.

KOHLSAAT, District Judge. The bill in this case alleges that the workmen employed in certain departments of complainant's manufacturing plants have left such employment in a body; have organized a "strike"; have, for the purpose of enforcing said "strike" and compelling complainant to accede to their demands, conspired to use organized efforts to injure complainant's business, and to cause complainant great pecuniary loss; have, in pursuance of such conspiracy, established patrols or pickets about complainant's several premises; and have, by acts of violence, as well as by other actions and words calculated to intimidate, caused such persons as desired to enter or remain in the employ of complainant to fear bodily injury in the event they do not refrain from such employment. The bill further alleges that many acts of violence have been committed against employés of complainant by strikers and by members of the lodges made parties defendant; that, because of the fear of said employés to go upon the streets of Chicago, complainant is compelled to maintain said employés within its premises, at great cost to it and injustice to them; that complainant's business has been injured to the extent of more than $100,000 by reason of said conspiracy and the acts of defendants in pursuance thereof; that the persons committing such acts are irresponsible; and that the damage done to complainant's business is, by reason of the premises, irreparable. The bill prays for the usual relief, and also for a temporary injunction restraining the various lodges made parties defendant, their officers and members, as well as the individuals specifically named as defendants, from conspiring to injure complainant's business and property, and from in any manner compelling or inducing, by the use of threats, intimidation of any sort, fraud, deception, or violence, any persons to leave complainant's employment, or not to enter its employ, if desirous of so doing, and from doing any act or thing whatsoever by any of the aforesaid means or methods in furtherance of a purpose to impede, interrupt, obstruct, or interfere with the business of complainant, or to impede any of its officers or employés in the free and unhindered conduct and control of complainant's business; also that the defendants and each of them, and their confederates, aiders, and abettors, be restrained from, both singly and in combination with others, picketing, guarding, obstructing, impeding, besetting, or patrolling the streets, alleys, or approaches to the premises of complainant, or ordering the same to be done, with the purpose and in such manner as to intimidate, threaten, impede, obstruct, or coerce any of the employés of complainant or persons seeking employment of the complainant.

In support of this motion complainant presents numerous affidavits, from which it appears that many of the present employés of complainant have been waylaid and badly beaten in going to and from the works of complainant; that the present employés are all in great fear of bodily injury in the event they leave the premises of

complainant; that these assaults are committed both near complainant's works and near the homes of such employés in distant parts of the city; that because of this fear on the part of said employés it has become necessary for complainant to provide for the board and lodging of said employés within its works, in order to retain them in its employ; that it is practically impossible for such employés to enter or leave said works without being accosted by patrols or pickets, and assaulted or menaced by acts or threats, with bodily injury in the event they remain in such employ; and that persons approaching said works for the purpose of obtaining employment from complainant are in like manner subjected to threats and intimidation.

By way of reply, two pleas have been filed,—one by defendant Ireland, averring that complainant is a trust, and therefore has no standing in equity; and the other by defendant Roderick, averring that complainant is a member of a voluntary association or combination of employers organized for the purpose of fighting the International Association of Machinists in the matters involved in this suit, and the methods pursued by said combination of employers are similar to the methods of defendants complained of in the bill. Neither of these pleas can be considered upon this application, at this stage of the proceeding.

Defendants also file numerous affidavits, which, in substance, set forth that none of the defendants have either committed, counseled, or countenanced any of the acts complained of in the bill and affidavits; that a strike is in progress, but that the same is peaceful and orderly; that no intimidation, threats, or violence are or have been used by defendants or by their direction; that the acts of violence set forth in complainant's affidavits, if the same ever occurred, were committed by enemies of defendants and of organized labor, for the purpose of discrediting defendants in the eyes of the court and of the public, or by the criminal elements of society, who have no manner of connection with defendants; that the only methods or procedure used by defendants in furtherance of their said strike are those of peaceable organization and moral suasion; that pickets have been established, under the direction of certain of defendants, near the works of complainant, for the sole purpose of notifying all workmen seeking employment there that a strike is on, and that the plant is fighting organized labor; that these pickets simply give this information, and in no manner, by acts, words, or demeanor, attempt to intimidate employés or prospective employés of complainant, or to coerce them into refusing to work for complainant.

While it will be seen that defendants deny all violence and intimidation, yet it is beyond question that such a condition exists about said plants that men seeking to work there stand in fear of bodily injury to such a degree that complainant for such reason is unable to secure a sufficient number to carry on its said business, and is compelled to keep what men it does employ within its premises, as in a fortress. They are there subject to so many privations that the only reasonable explanation for their enduring them is their evident desire to work, and their fear of bodily injury in case they

leave the plants. It further appears that the so-called "picketing" is systematically carried on, and that all persons supposed to be aiding complainant in the work formerly performed by the strikers are approached and remonstrated with. Certainly, if only peaceful persuasion is used, and there are no underlying or implied threats in the demeanor or language used by the strikers, either a large body of men are unusually and strangely timid, or defendants and their confederates have been very unfortunate in their manner of disclosing their peaceful and harmless intentions.

Under all the conflict of evidence in this case, it is undeniable that the defendants, or some of them, and their confederates, have conspired to and have greatly intimidated complainant's workmen, and thereby have intended to and have done great and irreparable injury to complainant's business and property, largely in excess of the necessary jurisdictional amount. It is conceivable, theoretically, that patrols or pickets could be maintained upon the platonic basis claimed by defendants; but the evidence, taken as a whole, leaves no doubt in the mind of the court that the name was not misapplied in this case. Here a siege exists. Probably to some extent the acts of violence complained of have been done by persons not members of the union and not connected in any manner with the striking workmen, but in some of the cases the evidence is so specific that it cannot be overlooked. It is true that at such times, when excitement runs high, the public mind is inflammable, at least among such persons as usually attach themselves to strikers. It is also true that the criminal classes take advantage of such occasions to commit, under cover of honest men, dastardly and cowardly acts. These facts applied to this case make it apparent that the conduct of defendants was calculated to work a serious wrong to complainant. In the judgment of the court, the pickets were in some case themselves guilty of intimidating complainant's workmen, and were the indirect, if not the direct, inspiration of like acts and of violence by others. It is conceded that these pickets were appointed and directed by officers and members of defendant lodges. That a conspiracy existed, among a number of these officers and members to stop, and thereby injure, the business of complainant, by intimidation and violence, is evident. In a conspiracy of this character, where it is difficult to even learn the names of the individual members of the lodges, the active co-operation of the individual members in the conspiracy is difficult to establish by direct proofs; but their acquiescence in, and connivance at, the methods pursued by their officers and leaders, is easily established by the results sought and accomplished.

These being the facts in this case, the law is clear and emphatic. The jurisdiction of a court of equity to restrain the defendants, under the circumstances, is too well established to require citations or be called in question by any one familiar with the decisions. The jurisdiction being established, is there any doubt as to whether the court should, in this case, grant the temporary injunction prayed for? I am clear there is not. As now presented, the court must grant the writ in broad and unmistakable terms, commensurate with the exigen-

cies of the situation, as shown by the facts in evidence upon this proceeding. To do so will work no hardship, nor will it even hamper the actions of any law-abiding person. Indeed, no one without a purpose to commit an unlawful act would be affected thereby.

It is the undoubted right of workmen to quit work severally or in a body, so long as the act does not come within the rule against conspiracies to injure the property of another. They may also use peaceable means in persuading others to join them in carrying out the strike, subject to the above rule. Both of these rights, however, must be exercised in such a manner as not to otherwise interfere with the right of every man to run his own business in his own way, provided he keeps within the law in so doing, or the right of every man to work or not to work, to strike or not to strike, to join a union or not, as he may think best. In other words, a man may decide his own course, and hold himself to certain rules, but he cannot impose those rules or that course upon the conduct of any other man, against his wish, any more than he can place fetters upon his hands or shackles upon his feet. And when, as in the case at bar, the attempt is made, through intimidation and acts of violence, to effect this end, it is tyranny of the most despotic character; it is civil war; it is treason to the principles of this and almost every other government. It will not be tolerated.

In many of the states this is prohibited by statute. In sections 158, 159, c. 38, Hurd's Rev. St. Ill., it is provided as follows:

"Sec. 158. If any two or more persons shall combine for the purpose of depriving the owner or possessor of property of its lawful use and management, or of preventing, by threats, suggestions of danger, or any unlawful means, any person from being employed by or obtaining employment from any such owner or possessor of property, on such terms as the parties concerned may agree upon, such person so offending shall be fined not exceeding $500, or confined in the county jail not exceeding six months.

"Sec. 159. If any person shall, by threat, intimidation, or unlawful interference, seek to prevent any other person from working or from obtaining work at any lawful business, on any terms that he may see fit, such person so offending shall be fined not exceeding $200."

This is a part of the Criminal Code. To the same effect is a long line of decisions independent of the statute.

When, however, the acts referred to are likely to cause irreparable injury to property, courts of chancery have, from time immemorial, taken jurisdiction for the purpose of protecting parties from such loss. In these days, when capital is tending towards combination, the application of the law is by many assumed to be the creation and enforcement of a new rule. It is as old as the common law, which itself succeeded the law of force. In this country the courts constitute an arm of the government. It is their province to protect the personal and property interests of every man, woman, and child in the enforcement of the laws. This, subject to such imperfections as are human, they have always done, and will do in the future. And herein is the safety of every citizen. Justice is said to be blind. Certain it is that she can discover no difference between the murderous assault, inflicted under cover of a strike, and that of the midnight assassin. Both are equally infamous; both equally criminal.

In considering the situation, it is reassuring to know that the great body of working men are law-abiding. They, of all men, appreciate the necessity of the enforcement of law. They have not so misread history as to think that capital was ever vanquished by labor in a struggle in which the weapons were force. They are fully alive to the public interests. The future holds the adjustment of the vexing disputes between labor and capital. These disputes are far from being one-sided. Their solution calls for all the wisdom and patience of which human nature is capable. But it will come, as right always will, even though force and injustice may clog its feet. The basis of its advancement must be that the rights of all are respected by each, and the rights of each by all.

Complainant's attorneys may prepare an order in accordance herewith, submit it to defendants' counsel, and present it to the court on Monday morning next.