GLOBE & RUTGERS FIRE INSURANCE COMPANY v. FIREMEN'S FUND INSURANCE COMPANY ET AL.

[52 South. 454.]

MASTER AND SERVANT.    *Interference with relation by third persons. Inducing servant to leave employment. Civil liability. Conspiracy. Action. Parties.*

While private persons or corporations, in order honestly to advance their interest, may induce plaintiff's agents to leave his employment and enter their own, they cannot conspire to illegally destroy plaintiff's business by wrongfully and maliciously inducing his agents to leave his employment and enter their own, without becoming liable for resulting damages; and where two or more conspire together to accomplish such a result they may be jointly sued, since the conspiracy makes the wrongful acts of each the joint wrongs of all of them.

FROM the circuit court of Adams county.

HON. MOYSE H. WILKINSON, Judge.

The Globe, etc., Insurance Company, appellant, was plaintiff in the court below; The Firemen's, etc., Insurance Company, six other insurance companies and divers individuals, appellees, were defendants there. From a judgment sustaining demurrers to the declaration and dismissing the suit the plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*T. M. Miller* and *Joseph Hirsh,* for appellant.

It is submitted that, at the present stage in the development of the principles of law relating to conspiracies and interference with contracts, the position of defendants' counsel is distinctly a retrograde.

According to their theory, which the court below was persuaded to accept, any number of persons, instigated by malevolence toward another engaged in a lawful business, may, with impunity, combine, and, for the purpose of driving him out of such business, may persuade and intimidate the employes upon whom he must depend for success into leaving his service; that, unless the employes are bound for a specific term, so as to be, themselves, subject to an action for breach of contract in such circumstances, the interference complained of belongs to the class of wrongs falling within the category *damnum absque injuria.* For, they say, actual pecuniary damage is the gist of the action of conspiracy and no damage, in a legal sense, can result where a person is intimidated into doing a thing injurious to another, but which he might do without accountability. And they say, further, that what an individual may do, without legal accountability, any number of persons may unite in doing.

If defendants are right, then it is a vain saying that every person has the right to be protected in a lawful business against obstruction or molestation, for it is entirely consistent with legitimate business to have employes whose services are at the will

of both parties. We are not dealing here with a situation where injury may incidentally flow from the exercise of a perfect right, as it would be where, for instance, one should, for his own benefit, employ the servant of a rival, who, having no contract for a term, is at liberty to quit at will. In such case, both the party alleged to have interfered and the servant leaving are in the exercise of their rights, which being true, no complaint can be made against either. But how different is the case where one not prosecuting any legitimate undertaking in his own behalf wantonly and maliciously, with no other object than to destroy the business of a rival, uses efficient means to induce or compel the employes of the latter to abandon his service? Such conduct is a tort, pure and simple, and it cannot be material, when it comes to the question of redress, whether the employe is one for a term or at will. The time is now almost prehistoric when the right of action for malicious interference with the business of another, in respect to the services of employes, was thought to be limited to *per quod servitium amisit* and as applied to the relation of a common servant.

A contract for service at will, should be as much entitled to protection against malicious interference as any other part of a business; nor can it be of any consequence whether a single individual is guilty, or a combination of persons are the offenders,— the only difference being in the added power of the combination to do the mischief. Counsel opposing seem to think that because the defendants were rivals in business they were within their rights in doing the things charged, so far as the plaintiff was concerned, and that if anybody was aggrieved it was the intimidated agent himself. As late as 1904, the supreme court of Massachusetts used this striking language in a conspiracy case where legitimate competition was set up as a justification: "To what extent combination may be allowed in competition is a matter about which there is as yet much conflict, but it is possible that in a

more advanced stage of the discussion the day may come when it will be more clearly seen, and will more distinctly appear in the adjudication of the courts than as yet has been the case, that the proposition that what one may lawfully do, any number of men acting together by combined agreement lawfully may do, is to be received with newly disclosed qualifications, arising out of the changed conditions of civilized life and of the increased facility and power of organized combination, and that the difference between the power of individuals acting each according to his own preference and that of an organized and extensive combination may be so great in its effect upon public and private interests as to cease to be simply one of degree and to reach the dignity of a difference in kind." *Martel v. White,* 102 Am. St. Rep. 345.

In the same case, the court said: "It is elemental that the unlawfulness of a conspiracy may be found either in the end sought or the means to be used. If either is unlawful within the meaning of the term as applied to the subject then the conspiracy is unlawful." And since it appeared that the object of the associated defendants was, by means of penalties inflicted, on their own members, to prevent dealings with non-members, and that the plaintiff was injured thereby, the court held that the case should have been left to the jury. The doctrine which, it is contended, applies to the case at bar, may be stated thus: "Everyone has the right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria,* unless some superior right by contract, or otherwise, is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of com-

petition or the service of any interest or lawful purpose, it then stands upon a different footing.    *Walker v. Cronin,* 107 Mass. 555; 2 Cooley, Torts (3d. ed.), 598.    "From the very nature of the case, it is manifest that the right of competition furnishes no justification for an act done by the use of means which in their nature are violative of the principle upon which it rests. The weapons used by the trader who relies upon this right for justification must be those furnished by the laws of trade, or, at least must not be inconsistent with their free operation." *Angle v. Chicago, etc., Ry. Co.,* 151 U. S. 13; *Martel v. White, supra.*

One who maliciously induces an employer to discharge an employe by means of false statements, threats or putting in fear, or perhaps by means of malevolent advice and persuasion, is liable to an action of tort by the employe.    And it makes no difference whether the employment was for a fixed term, not yet expired, or is terminable at the will of the employer.    2 Cooley, Torts (3d. ed.), 590, 591, citing numerous cases, among others *London Guarantee & Accident Co. v. Horn,* 206 Ill. 493, where the defendant corporation procured the plaintiff's discharge because he refused to accept a less sum than that to which he was entitled.

The defendant was held liable, the court saying: "We, therefore, conclude, both upon reason and authority, that where a third party induces an employer to discharge his employe, who is working under a contract terminable at will, but under which the employment would have continued indefinitely, in accordance with the desire of the employer, except for such interference, and where the only motive moving the third party is the desire to injure the employe and benefit himself at the expense of the employe by compelling the latter to surrender an alleged cause of action    *    *    *    and where such right of action does not depend upon, and is not connected with the continuance of

such employment, a cause of action arises in favor of the employe, against the third party." Mr. Cooley adds that the same general rules apply to an interference with one's trade or business as to interference with the employment of labor. Neither one person nor a combination of persons may interfere with one's business contracts, by inducing the obligors to break such contracts and for any such interference an action will lie." *Ib.* 600. "It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade, by fraud or misrepresentation, or by molesting his customers, or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation of physical or moral intimidation or persuasion, with an intent to inflict injury, which causes loss." *Doremus v. Hennessy* (Ill.), 43 L. R. A. 797.

The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right, or privilege, or property." *Ib.* In the case here cited the defendants combined to drive a rival out of business because she would not agree to their scale of prices, and the defense attempted was that they could not be held liable for merely inducing others to break their contracts, such others being free agents and not coerced by force or fraud; that their acts in inducing others to break their contracts were not mere malicious acts done solely with intent to injure the plaintiff, but were in the line of legitimate competition, and that they could not be held for acts charged to have been done in pursuance of a conspiracy, because a conspiracy does not create liability in a civil action, as the damage illegally done, and not the conspiracy, must be the gist of the action. The opinion in that case is refreshing to any mind averse to the triumph of the strong over the weak and wrong over right; and

it is refreshing to note that a substantial verdict was sustained against the conspirators, in addition to the direct damage proved, because the injury was maliciously inflicted. "Merely to persuade a person to break his contract may not be wrongful in law or fact; but if the persuasion be used for the indirect purpose of injuring the plaintiff, it is actonable if injury ensues from it." *Bowen v. Hall,* L. R. 6 Q. B. Div. 333.

It is said that Lord Holt's assertion of the existence of a common-law right to carry on a trade or earn a livelihood without hindrance or disturbance, after lying unnoticed for more than a century and a half, has been brought into much prominence in recent years. 16 Am. & Eng. Ency. 1110. The fully developed doctrine has been thus stated: If one maliciously interferes in a contract between two parties, and induces one of them to break that contract, to the injury of the other, the party injured can maintain an action against the wrong-doer." *Ib.* 1110, citing English and American cases. The existence of a *de facto* relation of master and servant has been held sufficient to maintain the action of tort for interference with another's business, as well as the enticement of workmen doing piecework without reference to a time contract. *Ib.* 1111.

"In the modern cases extending the remedy for interference to contracts generally, stress is usually laid on other circumstances, and the existence of a binding contract is not required." *Ib.* 1112. If the principle lies in the right of every person to pursue a lawful business, free of molestation, it can make no possible difference whether the maliciously persuaded or intimidated employe is engaged at will or for a term. An innkeeper has no special privilege upon the custom of particular individuals visiting his town, yet where the defendants, merchants and bankers of a town, without any purpose except to injure the plaintiff, who kept a hotel, combined to boycott the hotel by refusing to buy goods of drummers who stopped there, they be-

ing the chief source of patronage, and by persuading people not to stop at the hotel, they were held liable. *Webb v. Drake,* 52 La. Ann. 290. This case is cited in 2 Cooley, Torts, p. 601, in support of the proposition, established as the common law by the House of Lords, that a combination of two or more, without justification or excuse, to injure a man in his trade by inducing his customers, or servants to break their contracts with him or not to deal with him or continue in his employment is, if it results in damage to him, actionable.

If it be true, according to the now accepted doctrine that "one man singly, or any number of men jointly, having no legitimate interest to protect, may not lawfully ruin the business of another by maliciously inducing his patrons and third persons not to deal with him," then it cannot be maintained, on principle, that one man singly or any number of men jointly, in the same circumstances, may injure or ruin the business of another by maliciously persuading or intimidating the employes of such other into refusing to continue in his service, and escape liability. An actionable interference with contract relations is not confined to cases where the contract is binding and valid. "It is actionable likewise maliciously to induce the termination of a contract terminable at will or to prevent the formation of contracts, which, in the natural course and but for such interference, would have been formed." 16 Am. & Eng. Ency. 1114.

Counsel for defendants in the circuit court insisted that the declaration really charged but a refusal on the part of their clients to have relations of any kind with the plaintiff or its agent and, among the cases relied on to escape liability on that state of facts was *Orr v. Home Mutual Insurance Co.,* 12 La. Ann. 255, decided in 1857. In that case the plaintiff charged that the three insurance companies, defendants, had combined to ruin him in his business as a steamboat master by refusing to insure anything on any steamboat commanded by him and had put him out of business. An exception of no cause of action

was sustained; the court saying it was difficult to perceive in what respect the combination of three insurance companies, out of all the companies doing business in the city of New Orleans, could change the character of acts otherwise conceded to be lawful, and holding that the defendants had the right, separately or in concert, to decline taking risks on any boat of which the plaintiff should be master. In the case of *Graham v. Railroad Co.*, 47 La. Ann. 214, decided in 1895, the *Orr case* was relied on by the defendants, who were sued for maliciously causing employes to refuse to trade with the plaintiff, a small merchant, by threats of discharge; but the court held that the intentional causing of loss by one man to another without justifiable cause and with malicious purpose to effect it, is of itself a wrong and that it is a general principle that every act of man which causes damage to another obliges him by whose fault it happened to repair it. The court cited, with approval, *Longshore Printing & Publishing Co. v. Howell*, 38 Pac. 553, in which these expressions are found: "Every man has a right to be protected in his property rights," and "The labor and skill of the workman or the professional man—be it of low or high degree—the plant of a manufacturer, the equipment of a farmer, the investments of commerce, are all in equal sense property."

Lastly, it is submitted that a denial of plaintiff's right of action, on the case stated, would be an invitation to aggregations of power and wealth to form combinations for the purpose of suppressing rivals whose only fault consists in independence and due observance of the laws designed to promote free and open competition.

*McLaurin, Armistead & Brien,* for appellees.

Appellant and appellees were rivals, represented by the same agent in Natchez, and were in active competition, engaged in the same business in the same territory.

The court will notice that the declaration nowhere contains.

any allegations that the agent, Lawrence, was under contract. with appellant for any specified time, but was representing it simply at will, and had the right to decline business relations. with it at any time he saw proper. Such is the right of every one. It is laid down in 2 Addison on Torts, § 580, that "One has a right to decline to enter into a business undertaking with anyone. It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests or was the result of whim, caprice, prejudice or malice. With his reason neither the public nor third persons have any legal concern."

To the same effect is Cooley on Torts (1st ed.) 278, and the following cases: 11 L. R. A. 550; 34 Am. St. Rep. 171; *Delz v. Winfree,* 26 Am. St. Rep. 575; Beach on Monopolies and Industrial Trusts, § 851, note 3; 1 Eddy on Combinations. (1901), § 565.

Therefore if the appellant had no right of action against the agent Lawrence, for the breach of a contract, and had no right to complain of Lawrence quitting its service, how can appellant have a cause of action against others who employed Lawrence when it was not unlawful for the appellees or any third person to employ him? If no cause of action exists against Lawrence how can a cause of action exist against a third person through Lawrence? If there is no right of action in favor of appellant, founded on any legal rights existing between it and Lawrence, how could any legal right arise in favor of appellant against any third person through any relations existing between appellant and Lawrence? To state the case seems to answer it. Lawrence had a right to quit the service of appellant, for the declaration does not allege any contract with him.

Charging a conspiracy, as set forth in the declaration, gives no weight whatever to the allegation; a conspiracy may aggravate a wrong but will never give a right of action to any

conduct which in its own essence is not unlawful. To constitute an unlawful conspiracy three elements must appear: First, the combining together; second, for the purpose; third, of doing something unlawful, oppressing or immoral. 1 Eddy on Combinations, §§ 185, 364.

How could a right of action arise under this test on the facts averred in the declaration? There are no facts set forth in the declaration that the appellees combined together for the purpose of doing something unlawful. It was perfectly lawful for the appellees to employ Lawrence if they saw proper, because he was under no contract with appellant, and it was not unlawful for appellees as rivals of appellant to secure the services of the agent Lawrence for themselves if they saw proper.

Mayes, C. J., delivered the opinion of the court.

The Globe & Rutgers Fire Insurance Company began suit in the circuit court of Adams county against numerous insurance companies. We deem it unnecessary to name all the companies made defendants to the declaration. The suit is for an alleged tort, and the amount sued for is $50,000. The declaration alleges substantially that plaintiff is engaged in the business of writing fire insurance in the state of Mississippi, having complied with all the laws of the state relative thereto, and being duly licensed; that plaintiff conducts its business through numerous local agents in various towns and cities of the state, including the city of Natchez, all local agencies being under the supervision of its general state agents; that plaintiff is, and always has been, in active competition with defendants, all being engaged in the same business and in the same territory; that plaintiff has built up a large and lucrative business in fire insurance, and in consequence of its good management, stability, and just dealing has secured the good will of all the communities where its business is carried on; that plaintiff is independent

of all combination among insurance companies, and does not seek to increase rates of insurance, or cheapen the services of desirable agents, or otherwise hamper free competition in the fire insurance business, but conforms in all respects to all the laws applicable to the business; that, in order to prosecute its business successfully, plaintiff has found it necessary to employ agents in various places, who are experienced in the business and thoroughly competent, and who also represent other insurance companies; that because of its independence, justice, liberality, and success it has brought itself into strong disfavor with the defendants, who are its rivals in business; that because of these facts the defendants, with others unknown to plaintiff, wickedly and maliciously contriving and intending to harass, vex, oppress, annoy, and injure the plaintiff, and as far as practicable put it out of business in the state, by depriving it of the service of successful and experienced agents employed by it, and in an effort to bring it into discredit and disfavor with the public and compel it to quit business, or employ inexperienced persons as its local agents, did about the 30th of April, 1908, and in the county of Adams, wickedly, maliciously, and unlawfully, and with the intention and purpose aforesaid conspire with each other and with others unknown, and intending to deprive plaintiff of the services of one Trabue Lawrence, its local agent, maliciously and unlawfully, persuade, cajole, and intimidate Trabue Lawrence, the defendant's local agent, threatening to drive him out of his business as insurance agent unless he should yield; that thereupon the said Lawrence was persuaded, forced, and intimidated by the defendants into abandoning and leaving the service of plaintiff, so that from and after the 2d day of May, 1908, plaintiff lost the benefit of the valuable service of the aforesaid Lawrence on account of the wicked, malicious, and unlawful conspiracy of the defendants; that because of this conspiracy plaintiff was compelled either to

quit business in Natchez or intrust its affairs to less experienced and less competent local agents, to its damage of at least $3,000 per annum in net premiums, which it could and would have earned, had it been permitted to retain the services of Lawrence. Wherefore plaintiff claims that by reason of the aforesaid wicked, malicious, unlawful, and oppressive conspiracy it has sustained injury and damage in the sum of $50,000, for which it sues. To this declaration a demurrer was interposed, setting up numerous grounds; the chief one being that the declaration does not aver any facts which constitute a cause of action. The demurrer was sustained, and the suit dismissed, from which judgment an appeal is prosecuted.

It may here be stated that there is an affidavit filed by Lawrence in which he denies the allegations of the declaration. But this case must be considered without reference to this affidavit, since it forms no part of the question presented by the record. If the declaration states a good cause of action, the demurrer must be overruled. Plaintiff cannot be precluded in its suit by any denial made by Lawrence. It may be able to prove the facts alleged in the declaration by other witnesses. The demurrer confesses every material allegation of the declaration, and with such allegations confessed it is for us to determine whether a cause of action appears. The affidavit cannot add to or take away from the legal effect of the case.

The declaration states facts which show that defendants are not in the mere exercise of just rights, but that they are wickedly, unlawfully, and maliciously interfering with plaintiff's employe for the sole purpose of harming it. Under the facts alleged in the declaration, it may have been perfectly permissible for the defendants to have employed the agent of plaintiff and to pay him better for his services. They might employ him, or any number of plaintiff's agents similarly in the employ of plaintiff, without violating any principle of lawful right, if the

object of the employment was in the honest furtherance of their own business enterprises.   But the facts stated in the declaration show a determination to destroy and drive plaintiff out of business, and the declaration alleges a conspiracy for this purpose.   Surely no individual or corporation may maliciously and wantonly set about to ruin a competitor.   As an incident to the advance of one's own business and for the purpose, he has the right to use all proper methods, and his competitors must be able to cope with his ingenuities.   As is said in the case of *Martel v. White,* 185 Mass. 260, 69 N. E. 1087, 64 L. R. A. 263, 102 Am. St. Rep. 346: "Competition in business is permitted, although frequently disastrous to those engaged in it. It is always selfish, often sharp, and sometimes deadly."   The fact that a rival in business is vanquished is not of itself sufficient to give rise to a cause of action against his competitor; but the facts must go further, and show that the contest was carried on by methods not allowable in such warfare.

For an association of persons to conspire together for the sole purpose of destroying one's business certainly transcends legitimate and lawful competitive methods.   Every person must be free to ply his own calling.   If he may be interfered with by having his employes driven from his service by fraud, misrepresentation, intimidation, obstruction, or molestation, and in this way have his business destroyed, the effect upon his business operations and progress is as deadly as if the law permitted an incendiary to burn or a mob to destroy.   If his business is to be destroyed, it can make little difference in result whether it be by the unlawful use of fire or unlawful intimidation or molestation.   Legitimate competition he must meet, or surrender; but legitimate competition only means that all may make the best lawful use of their faculties and their means.   If in so doing their competitor's business is destroyed as a mere incident of his inability to successfully contend against superior

skill or means, that is but the hardship of legitimate warfare. The world is always in search of improved methods and reduction of cost.   *Martel v. White,* 185 Mass. 255, 69 N. E. 1085, 64 L. R. A. 260, 102 Am. St. Rep. 341.

In the case of *Employing Printers' Club v. Doctor Blosser Company,* 122 Ga. 509, 50 S. E. 353, 106 Am. St. Rep. 137, there is to be found a lengthy and exhaustive discussion of the question involved in this case.   In that case it is held. that, wherever there is a malicious interference with one's employes, an action can be maintained against the party so interfering. It is stated on page 516 of 122 Ga., on page 355 of .50 S. E., and on page 142 of 106 Am. St. Rep., that: "At common law the remedies for breach of contract were confined to the contracting parties, and limited to direct damages and consequential damages proximately resulting from the act of him who is sued. This general rule admitted of one exception, and that was the right of action against a stranger for wrongfully enticing away a servant in violation of his contract of service with his master. The exception is said to have been based on the ancient statutes of laborers.   The early English cases limited the action to the enticement of menial servants; but the later cases, beginning with *Lumly v. Gye,* 2 El. & B. 216, have extended the doctrine beyond menial servants, and by the modern interpretation of this doctrine by the English courts the rule is extended to a malicious interference with any contract.   *   *   *   In the case of *Quinn v. Leathem* [1901] L. R. App. Cas. 495, after reviewing many cases, it was stated that: 'A combination of two or more, without justification or excuse, to injure a man in his trade, by inducing his customers or servants to break their contracts with him, or not to deal with him or continue in his employment, is, if it results in damage to him, actionable.' The supreme court of the United States approvingly cited the English cases of *Lumly v. Gye,* 2 El. & B. 216, and *Bowen v.*

*Hall,* 6 Q. B. Div. 333, and reached the conclusion that, if one maliciously interferes with a contract to the injury of the other, the party injured may maintain an action against the wrongdoer.    *Angle v. Chicago Ry. Co.,* 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55."

In the case of *Delz v. Winfree, Norman & Pearson,* 80 Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755, it is stated that: "Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit.    He has no right to be protected against competition; but he has a right to be free from a malicious and wanton interference, disturbance, or annoyance.    If disturbance or loss comes as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria,* unless some superior right by contract or otherwise is interfered with.    But if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing."    See, also, *Walker v. Cronin,* 107 Mass. 562.

In the case under consideration, as well as the case above cited, it appears from the declaration that the interference with the business of plaintiff was not incidental to the accomplishment of some legitimate purpose of the defendants, but that the interference was wanton and malicious, and for the purpose of driving the plaintiff out of business.    The gist of this action is the malicious and unlawful interference with plaintiff's business, to his damage.    The action would lie as well against one as against all the defendants; but the charge of the conspiracy is the basis of the right to join all in the same suit as parties defendant.    It becomes, by reason of the conspiracy, the joint wrong of all the conspirators.    Cooley on Torts, § 125; *Delz v. Winfree,* 80 Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755. See, also, 11 Am. St. Rep. note on page 474.

As we have already seen from the authorities, the right to

recover for malicious interference extends to all kinds of contracts; that is to say, all contracts of service whatever may be their nature. But it is argued on the part of appellees that there was no contract for any definite period of time between plaintiff and Lawrence, and therefore there could be no interference which would justify the action. We do not think, under the authorities, that it makes any difference whether there was a contract between plaintiff and Lawrence for a definite period of time or not. There was a service and a *quasi*-contract, and plaintiff had a right to have this service to continue free of malicious interference. The suit is because of a malicious and wanton interference with plaintiff's rights, and is not for the breach of any contract.

Counsel for appellees cite the cases of *Hunt v. Simonds,* 19 Mo. 583, and *Orr v. Home Mutual Ins. Co.,* 12 La. Ann. 225, 68 Am. Dec. 770, wherein it was held that an action would not lie against the officers of an insurance company, combining and conspiring to willfully and maliciously injure the owner, by refusing, without cause, to take insurance upon his boat, whereby he is deprived of his occupation and compelled to sell the boat. We say of these cases that they are decided, one in 1854 and the other in 1857, and are out of harmony with modern decisions upon this subject. In truth, their holding is expressly repudiated in 2 Eddy on Combinations, p. 513; 16 Encyc. Law (2d ed.) 1111.

There may be some early authorities which conflict with the view of the law announced in this case; but the more modern and more just decisions, according to our view, sustain our conclusions. We were early taught that one of the maxims of the law was that "there is no wrong without its remedy." Wanton and malicious interference with one's business, with the purpose to destroy it, is a wrong that will be admitted by the most indifferent. We hardly think it necessary to pursue the discussion of this case further.

*Reversed and remanded.*