STATE *ex rel.* RICE, ATTY. GEN., *et al. v.* HASSON GROCERY Co. *et al.*

(Division B. Oct. 26, 1936. Suggestion of Error Overruled Nov. 23, 1936.)

[170 So. 234. No. 32347.]

**W. W. Pierce**, Assistant Attorney General, for appellants.

208

**S. B. Thomas,** of Greenville, for appellees.

Brunini & Hirsch, of Vicksburg, S. B. Thomas, of Greenville, Hannah & Simrall, of Hattiesburg, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

The Attorney General of the state filed a bill against the appellees, consisting of numerous persons, firms, and corporations, on September 1, 1934, seeking to compel them to file the reports and pay the mileage tax required on certain motor vehicles under chapter 126, Laws of 1934, said bill being filed in the chancery court, joined in by the then Auditor of Public Accounts, and invoking as grounds therefor: First, a mandatory injunction that daily records be filed with the auditor, on all motor vehicles operated by them showing the actual number of miles of public highway traversed by such vehicles, and the reading of the speedometer at the beginning of each month, and the termini of each day's run since January 1, 1934; and to also file a monthly report showing the permit number, tag number, motor or serial number, and the make, kind, size, and carrying capacity of each vehicle; the actual miles of highway traversed since January 1, 1934, and the amount of tax due or paid to the auditor. The bill sought an injunction commanding the defendant to refrain from operating each and all of the motor vehicles upon the public highways for failure to keep said reports. Second, the bill sought to require the defendants to discover the number of miles traversed upon and over the public

highways by each motor vehicle since January 1, 1934, together with the weight of the greatest load carried at any one time, to the end that the complainants might make proper recovery of the amount of taxes due. Three, the bill alleged that it was filed for the purpose of preventing irreparable injury to the highways, and to prevent the inevitable destruction of public property in the furtherance of the pursuit of private business, and the loss of compensation to which the state is entitled. Fourth, to avoid a multiplicity of suits, and to enforce a common right against all of the defendants who have an interest in the questions of law and fact involved, and a common design to hinder, prevent, and defeat the payment of the tax due. Fifth, the bill alleges that complainants are without a full, complete, and adequate remedy at law. The bill then set forth that since January 1, 1934, the defendants named therein are required to file with the auditor each month a report showing the qualifications required by chapter 126, Laws of 1934, but that each of said defendants has failed, neglected, and refused so to do, and have likewise failed and neglected to pay the amount of tax due to the state on such motor vehicles, and that said defendants will continue to operate the aforesaid vehicles, or trucks, without complying with the law governing the same and without the payment of the proper privilege tax due thereon. The bill alleged that pursuant to the statute, the defendants were entitled to the privilege of operating said motor vehicles upon the highways of the state to the extent of six thousand miles, upon the payment of the flat road and bridge privilege tax thereon, but charged the truth to be that each of the defendants had during the year 1934 operated their motor vehicles upon the public highways of the state greatly in excess of the mileage for which they paid the tax, and that each of them now owe the state for taxes due in excess of the said mileage, the tax due being based

upon the carrying capacity of said vehicles. It is further alleged by the complainants that the defendants are in possession of certain facts and data with reference to the mileage of each of the motortrucks mentioned in the bill, and that they know the number of miles traveled on the highways of the state in excess of that for which the privilege tax was paid during the year, and the amount of the greatest load actually carried, at any one time, by each of their motor vehicles; that said facts are exclusively within the knowledge of the defendants, and complainants have been unable to ascertain the number of miles each of defendants' trucks has traveled since January 1, 1934, to the present time, and defendants have failed, neglected, and refused to give such information to complainants. It is further alleged in the bill that the defendants have conspired and designed to hinder and prevent complainants from collecting the mileage taxes imposed by the statute, and by so doing have encouraged other motor vehicle operators from keeping daily and monthly records and filing same, and from paying the tax due, and have prevented the complainants from enforcing the filing of such reports with the auditor, and to that end the defendants have organized themselves into an association called "The Commercial Motor Vehicle Association, Inc., of Mississippi;" that said association is unincorporated, and is composed of the defendants and others unknown to complainants. Complainants further allege that the members of this association have selected officers, have drawn up and adopted a so-called "constitution and by-laws," and that the executive secretary thereof is in charge of all records, books, and files of said association, and that the defendants have agreed and conspired, and have refused to file daily and monthly records, and to pay mileage taxes on motor vehicles operated as aforesaid, and, acting through their officers and agents, have given out and circulated by letters, bulletins, and other-

wise, advice to truck operators to refuse to keep records, and have employed attorneys to aid members in resisting the filing of records and prevent the payment of taxes, representing that these attorneys would represent any one becoming a member of said association without additional cost. The bill then prays for process to issue for each of the defendants commanding them to appear and plead, answer, or demur to the bill at the next regular term of the chancery court of Lauderdale county; that the defendants be required to make discovery of the actual miles of public highways traversed by the defendants' motor trucks during each preceding calendar year preceding this date since January 1, 1934, showing the reading of the speedometer on each of said trucks at the beginning of each month since January 1, 1934, together with the termini of each day's run, and the mileage traversed each day, and the tax due the state for the total mileage all of said motor vehicles have been operated on the streets and highways in this state in excess of the mileage for which a flat privilege tax had been paid. The bill then prayed for a temporary injunction, and for a decree against the defendants for the full amount of the privilege tax found to be due, together with a penalty of fifty per cent. of the tax found to be due thereon, and all expenses incurred, and prohibiting and enjoining the defendants from using said trucks upon the highways for any purpose whatsoever for a period of six months from the date of the decree, and for general relief.

The defendants filed a general answer admitting the allegations of the bill of complaint contained in paragraphs 1, 2, 5, 6, and 8, but denying the allegations of paragraphs 3, 4, 9, 10, 11, and 13, and neither admitting nor denying the allegations of paragraph 7. This answer was filed on or before November 1, 1934, and apparently nothing was done after the filing of the answer until after the decision of this court in the case of State

v. Evans-Terry Co., 173 Miss. 526, 159 So. 658, decided by this court on February 25, 1935, from which an appeal was taken to the Supreme Court of the United States, where it was affirmed at the October term, 1935, and is reported in 296 U. S. 538, 56 S. Ct. 126, 80 L. Ed. 383, citing numerous decisions of that court.

On November 7, 1935, by leave of court, the defendants filed a plea of misjoinder denying that they had concerted to defraud the state of Mississippi, averring that there had been no agreement, and denying that they had a common interest. Certain witnesses were introduced on this plea who stated that they had not individually advised others not to report and pay the tax, but that each person acted on his own judgment in so doing. It also appeared that in a meeting to discuss the matter, the members of the association were advised, by attorneys employed to investigate, that the law imposing the mileage tax was unconstitutional, but that said attorneys would not advise making said reports; that some of the defendants, or persons present, felt like it would be better to pay the tax, but most of them expressed the opinion that they did not want to pay it unless it was legal. Among the witnesses introduced was one W. J. Rea, secretary of the association during 1934, and on cross-examination he admitted writing certain letters.

On June 16, 1934, upon stationery of the "Commercial Motor Vehicle Association of Mississippi," a letter signed by W. J. Rea among other things, contains the following statements: "An enthusiastic meeting was held Friday, June 15, at the offices of the Commercial Vehicle Association, which was attended by representatives of almost every industry from all sections of Mississippi. It was a great meeting, and those who failed to attend missed much information that is of vital interest to every truck operator in the state. A report of the attorneys retained by the Association to investigate

the legality of the present truck and bus act was made. They advised us in view of the doubtfulness of the constitutionality of the Act, the attorneys did not advise the payment of the mileage tax. The secretary of the Association was directed by the President to advise the membership fully of this report made by the attorneys of the Association, and especially directed to advise the membership not to make any further payment of mileage tax, and also to pass this information to all truck owners in the state."

On August 4, 1934, on stationery of the Commercial Motor Vehicle Association, Inc., the secretary, W. J. Rea, in a letter to the members of the association, among other things, said as follows: "The attorneys of the Association again advise the membership not to report and not to pay the mileage tax, and in the event any member is cited to appear to resist an application for an injunction, they should immediately forward the citation to the secretary of the Association, and the matter will receive the prompt attention of the attorneys, but under no condition should they report and pay the mileage tax unless they are enjoined to make the report. In the opinion of the attorneys, no temporary injunction will be granted requiring the truck operators of the State to pay the mileage tax, nor will a temporary injunction be granted to restrain the operation of their trucks over the streets and highways of the State."

On July 14, 1934, said secretary wrote to the members, among other things, the following: "Numerous inquiries have been received at this office in regard to a circular letter of July 10, 1934, issued by the Attorney General's office in regard to the payment of the mileage tax. In this circular letter, you are given the choice of two courses, '1. That you make your mileage reports and pay the tax, under protest, and sue to recover it within thirty days, in which event the Auditor will impound the tax paid by you and return it to you if the court

holds you are not liable for the tax. By following this procedure, you can preserve every right and privilege afforded you to test the law, and every right and privilege claimed by the Mississippi Truck Operators Association without incurring penalties and subjecting yourself to being enjoined from the use of the highways. 2. If you do not make the mileage reports and keep daily reports as required by statute and pay the tax, you will thereby force us to enter suit against you to require you to make the mileage reports, pay the mileage tax with a 50 per cent. penalty thereon, and to enjoin you from operating your trucks on the public highways for any purpose whatever for a period of from one to six months.' At a meeting of the officers and directors of the Commercial Motor Vehicle Association with their attorneys, held June 15, 1934, it was decided that the members of our Association submit themselves to a suit by the State Auditor before paying the mileage tax. The attorneys for our Association now advise all members to follow this course and not make any payment to the State Auditor for mileage tax. A large number of our members have been cited to appear before (a judge) for failure to report or pay the mileage tax. Citations are being prepared against many other firms and operators that will be served as soon as the Attorney General's office can prepare them and get service. Any members of our Association that have been cited or notice has been given that suit will be filed, please advise this office immediately in order that our attorneys may be in a position to handle your case along with all other such suits.''

On July 17, 1934, among other things, said secretary said, in a letter to the members of the association, as follows: ''The attorney general is now preparing injunction proceedings against truck operators in all sections of the state who have not reported and paid the mileage tax. . . . If you have not been summoned

with a subpoena to appear in court, then it is only a question of time until you will be, just as soon as the Attorney General reaches your particular case; therefore, it is not a question of if suit will be filed, but when will suit be filed against you, and when will you be served with a subpoena. The purpose of this letter to the members of our Association is to advise you that our Association has employed able counsel to defend these suits for our members, and it is our intention to defend these suits for our members when suit is brought; therefore, if you have been served with a subpœna promptly send same into this office so that our attorneys can take charge of your case for you. If you have not been served with a summons, just as soon as same is served on you, kindly get in touch with this office and turn same over to us to handle for you. . . . You, of course, understand that there will not be any additional cost to you for attorney's fee, as the Association is furnishing the Attorney service to all its members."

The secretary testified that copies of the letters were sent to all officers and members of the association. None of the persons testifying denied the receipt of these letters from the secretary of the association written for the protection of the interests of the motor vehicle owners. The Commercial Motor Vehicle Association, Inc., was not incorporated, and it was an agency for each member thereof. Therefore the act of its secretary was the act of each member who joined with it in resisting the collection of the tax and the making of daily and monthly reports.

In the court below, the chancellor held that what the defendants did, they had a right to do, and that while there might have been a common interest in legal matters and questions of fact at the time of the filing of the bill, that interest disappeared with the upholding of the constitutionality of the law.

We are of the opinion that the chancellor was in error

in holding that the defendants had a right to do what they did. By section 20, chapter 126, Laws of 1934 (amending Laws 1932, c. 135, sec. 21), it is provided that: "It shall be unlawful for any operator or driver of any bus or truck of two and one-half tons carrying capacity or more, to haul or transport any property or persons upon the highways of Mississippi without a permit as required hereunder, or to fail or refuse to present such permit for examination by any lawful officer, or to fail or refuse to make a true and correct report, as herein provided, or to make an untrue report, and shall subject such person to the penalties hereinafter imposed." This section requires suits for this violation to be brought in the chancery court, and that if, on a trial of the case, the chancellor be of the opinion that the violations were willful, he is authorized to enjoin the person so violating said act from using the streets and highways for a period of not less than one nor more than six months, and if there be a second violation, to prohibit such person from using the streets and highways for not less than six nor more than twelve months. The act imposes a penalty on failure to pay the tax, and makes this penalty a first lien on the vehicle.

By section 17 of the act (amending Laws 1932, c. 135, sec. 17), it is provided that every operator of a motor vehicle shall file with the auditor reports on forms containing the permit number, tag number, motor number or serial number, kind, size, and carrying or seating capacity as defined in the act, of each vehicle used by the operator during the previous calendar month on the public highways of the state.

Section 16 of the act (amending Laws 1932, c. 135, sec. 16) requires the keeping of daily record to be filed with the auditor with the monthly record required by the act.

Inasmuch as the constitutionality of the law was upheld in State v. Evans-Terry Co., 173 Miss. 526, 159 So.

658, and affirmed in the same case in 296 U. S. 538, 56 S. Ct. 126, 80 L. Ed. 383, it is clear that the act of each vehicle operator was unlawful. Therefore, the agreement made in regard to payment of the tax was an unlawful agreement and was a conspiracy. An act of the Legislature is given validity and vitality by its enactment, consequently the act involved in this suit was valid from the time of its approval, and it became the duty of the defendants to make reports and pay the tax.

The opinion of the defendants or their attorneys does not change the law in any respect. A person is charged, at his peril, with knowledge of the law, and is not excusable from obeying it by reason of his personal opinion that the law is unconstitutional, nor can the advice of counsel affecting the validity of any act affect its validity.

It has been held in the case of Globe & Rutgers Fire Ins. Co. v. Firemen's Fund Ins. Co., et al., 97 Miss. 148, 52 So. 454, 29 L. R. A. (N. S.) 869, that private persons cannot conspire to illegally destroy the business of another, and where two or more conspire together, the conspiracy makes the wrongful acts of each the joint acts of all of them. See, also, Wesley v. Native Lumber Co., 97 Miss. 814, 53 So. 346, Ann. Cas. 1912D, 796.

In the case of J. K. Orr Shoe Co. v. Edwards et al., 111 Miss. 542, 71 So. 816, it was held that where a bill charges a fraudulent conspiracy in obtaining goods belonging to complainants and prays discovery and for an accounting, it shows a case for equity jurisdiction. The bill there charged a conspiracy between the appellee and a codefendant to defraud the appellant, and it was held that where diligence was exercised to discover the fraud, the statute of limitations did not run against the complainant until the fraud was discovered.

The principles in a conspiracy to injure another person are ably and fully discussed in Employing Printers' Club v. Doctor Blosser Co., 122 Ga. 509, 50 S. E. 353,

69 L. R. A. 90, 106 Am. St. Rep. 137, 2 Ann. Cas. 694, and were also discussed, although the facts were different from those involved in the case at bar, in a number of cases in the federal court. Rocky Mountain Bell Telephone Co. v. Montana Federation of Labor (C.C.), 156 F. 809, 817, wherein the court held that: "According to the principles of the common law, a conspiracy upon the part of two or more persons, with the intent by their combined power to wrong others, or to prejudice the rights of the public, is in itself illegal, although nothing can actually be done in execution of such conspiracy. This is fundamental in our jurisprudence. So a combination or conspiracy to procure an employee or body of employees to quit service in violation of the contract of service would be unlawful, and in a proper case might be enjoined, if the injury threatened would be irremediable at law. It is one thing for a single individual, or for several individuals each acting upon his own responsibility, and not in co-operation with others, to form the purpose of inflicting actual injury upon the property or rights of others. It is quite a different thing, in the eye of the law, for many persons to combine or conspire together with the intent, not simply of asserting their rights or of accomplishing lawful ends by peaceable methods, but of employing their united energies to injure others or the public." See, also, Atchison, T. & S. F. Ry. Co. v. Gee (C.C.), 139 F. 582; Allis Chalmers Co. v. Reliable Lodge (C.C.), 111 F. 264; American Steel & Wire Co. v. Wire Drawers' Union (C.C.), 90 F. 608; Union Pac. Ry. Co. v. Ruef (C.C.), 120 F. 102; Arthur v. Oakes, 63 F. 310, 11 C.C.A. 209, 25 L. R. A. 414; Loewe v. California State Federation (C.C.), 139 F. 71; Hawarden v. Youghiogheny Coal & L. Co., 111 Wis. 545, 87 N. W. 472, 55 L. R. A. 828; and Randall v. Lonstorf et al., 126 Wis. 147, 105 N. W. 663, 3 L. R. A. (N. S.) 470, 5 Ann. Cas. 371.

The chancellor, in his opinion in the case at bar, said

that the state was not damaged, and that no showing was made to that effect.

It is manifest, from a reading of the law, chapter 126, Laws of 1934, that the state was damaged by being hindered in the collection of its funds and the penalty imposed for failure to pay, and the interest that accrued upon the sum due. The state was also put to the trouble and expense of filing suits and paying the costs thereof. The state is operated upon funds provided by taxation, and if such taxes are not paid, it cannot perform the functions assumed by it, viz., the construction of highways, letting of proper contracts, and the payment of bonds and other state debts, all of which constitutes sufficient damage. Furthermore, by reason of the conspiracy of the defendants, others were encouraged to do likewise, to the detriment of the state in its governmental actions, and judgment will be rendered, on a trial, for such amount as the several defendants may be shown to be due the state.

In view of the conclusion we have reached on the allegations of conspiracy, it is not necessary to discuss or decide the question of multiplicity of suits.

Consequently, the chancellor should have retained jurisdiction of the suit and granted the relief prayed for, inasmuch as the amount to be paid must be ascertained by discovery, and by such evidence as may be available in such cases, the judgment will be reversed, and the cause remanded, with directions to proceed in accordance with these views.

Reversed and remanded.