## INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY
### v. THOMAS GREENWOOD.
#### NO. 102.

**1. Boycott — Interference with Plaintiff's Business.** — A petition of a hotel and saloon keeper which in substance avers, that defendant employs many thousand men, who occasionally visit Houston; that defendant had instituted a boycott against plaintiff, and used its immense power and influence to drive away his customers; that its division road master, who employs more than a thousand men, by authority of defendant, vigorously prosecuted the boycott, and publicly declared that he would discharge and refuse employment to men who patronized plaintiff, and did discharge a number of men on that account, and instructed his foremen to refuse employment to plaintiff's patrons; that defendant was fully informed of the conduct of its servants, and ratified it, whereby plaintiff has been damaged in his business $100 per month from June, 1888, to day of trial, states a cause of action good against a general demurrer.

**2. The word "Boycott."** — Whether it has acquired in modern usage a meaning sufficiently definite for a court to take notice of in pleading, without explanation, is not material in this case. So far as its import is developed, the term boycott does not seem very applicable.

**3. Injury to Trade.**—The acts alleged, and not the name given them, determine the legal characteristics of the cause of action; and though no conspiracy be charged, injury to one's trade, inflicted without a conspiracy, will subject the guilty party to damages.

**4. Right of Master over Servants' Eating and Drinking.**—A master has the right to discharge his servants for reasonable causes only, and it would have been no just ground for discharging its servants because they ate at plaintiff's house or drank at his bar. They presumably had the right to eat and drink where they chose, so long as they violated no contract with their employer, and performed their service well; and the malicious use of such moral coercion as the petition alleges, for the purpose of injuring plaintiff, was wrongful, and made the defendant liable for the damages thereby inflicted.

**5. Terms of Employment.** — The master has the right to determine for himself whom he will employ, and therefore defendant had the right to give notice that for the future it would not employ any one who patronized plaintiff. The reasons upon which it might act concerned no one but itself.

**6. Lawful Business.**—It was not necessary that the petition should allege that plaintiff's business was lawful. Keeping a hotel is per se a lawful business, and selling liquor may become so by compliance with the law regulating it.

**7. Charge Properly Refused.**—"If you believe from the evidence that defendant company, or its agents, did instruct its employes not to patronize the plaintiff's hotel and saloon, but did so to prevent troublesome litigation with plaintiff, or interference with their customs or regulations with their employes, but not for the purpose of injury to plaintiff or his business, you will find for the defendant," properly refused. How such order would prevent litigation is not made to appear.

**8. Exemplary Damages.**—Adjudged, that the act of defendant was not done wantonly or maliciously, and plaintiff was not entitled to exemplary damages, and he is given ten days within which to remit the exemplary damages found by the jury, or case reversed.

Error from Harris.   Tried below before Hon. James Masterson.

The order of the road master was: "Give your men orders not to have any further 'dealings' with this man Greenwood, and if they do, discharge them."

*Ford & McComb*, for plaintiff in error.—1.  A petition in a suit to recover damages for an alleged boycott must show on its face, by proper averment, a conspiracy entered into by the defendants to prevent the plaintiff, who was engaged in a lawful business, from carrying on his business, or to injure him therein, and it must be alleged that whatever damages the plaintiff sustained in his said business was caused by the boycott of defendant.   2 Am. and Eng. Encycl. of Law, 512.

2.  An employer or master has the right to prohibit, by command, his employes or servants from attending any place of resort, such as a saloon and boarding house combined, under penalty of being discharged from his service if they violate such command or rule, and no action will lie against such master or employer by the owner or proprietor of such place for making and enforcing against his servants or employes such command.   3 Wait's Act. and Def., 601, 602; 4 Wait's Act. and Def., 403, sec. 10, and authorities; Wood on Mast. and Serv., secs. 109–118; 75 Texas, 634.

3.  Where a plaintiff seeks to recover damages (even in a proper case) for an alleged interference with or injury to his business by another, the petition, in order to be good on demurrer, must aver that the business in which the plaintiff was engaged was a lawful business.   Wood's Law of Mast. and Serv., 409, sec. 211, and authorities; Am. and Eng. Encycl. of Law, 49, par. 10, and note and authorities.

*T. E. Conn* and *Henry F. Fisher*, for defendant in error.—1.  A petition in an action for damages arising through a tort, which sets out substantially the injurious acts complained of, the damaging results thereof, and praying adequate relief, is sufficient on general demurrer.   Rev. Stats., art. 1178; Railway v. Curry, 64 Texas, 85.

That petition stated good cause of action: Payne v. Railway, 13 Tenn., 521; Steamship Co. v. MacGregor, 22 Alb. Law Journal, 33; 1 Suth. on Dam., 19, 121, 750; Day v. Woodworth, 13 How., 363; Drohn v. Brewer, 77 Ill., 280.

That Cronin was a vice-principal, and that his acts were those of the company:   Railway v. Williams, 12 S. W. Rep., 835; Cleghorn v. Railway, 56 N. Y., 44.

2.  A person can not be heard to claim that the necessary and proximate result of an unlawful act by him deliberately done was not intended to produce its necessary, immediate, and reasonable evil consequences.   1 Suth. on Dam., 2, 21; Payne v. Railway, 14 Tenn., 521.

3.  The verdict was amply justified by the law and facts, and the court

properly refused a new trial.    Barnette v. Hicks, 6 Texas, 352; McGehee
v. Schafer, 9 Texas, 20; Clark v. Binney, 2 Pick., 113; Coleman v.
Southwick, 9 Johns., 45.

WILLIAMS, ASSOCIATE JUSTICE.—This is a suit by appellee against
appellant for damages in the sum of $5700 actual and $10,000 exemplary
damages.    The petition alleges:

That defendant employs many thousand men in different capacities as
laborers and servants, nearly all of whom do occasionally visit the city
of Houston upon business or pleasure; that many thousands of the peo-
ple who inhabit the many towns and cities along defendant's said lines of
railway visit the city of Houston, and have been accustomed so to do for
more than one year last past; that by reason of its immense business con-
nections and its great army of employes, the defendant possesses great
power and influence for good or evil.

That plaintiff, since the 1st day of June, 1888, has been and is now the
proprietor of the boarding house and saloon attached thereto on the cor-
ner of Congress and Caroline Streets, in the city of Houston, in Harris
County, Texas, called the Commercial Hotel.

That on or about the 1st day of June, 1888, the said defendant com-
pany did unlawfully, wickedly, maliciously, and oppressively institute
and inaugurate a "boycott" against plaintiff, and did use its immense
power and influence to drive away his custom and patrons and destroy
his business.

That on or about the 1st day of November, 1888, one McElyea, a di-
vision road master on the Gulf division of defendant's road, whose busi-
ness in the line of his duty is and was to employ more than 1000 men, and
work and control them in keeping a great many miles of said defendant's
road in repair, did assume to act for and by authority of defendant, and did
vigorously and maliciously prosecute said boycott so instituted and cre-
ated by defendant against plaintiff as aforesaid, and did publicly declare
it to be his intention to discharge and refuse employment to any and all
men who should in any way patronize plaintiff, either by eating at his
house or drinking at his bar.

That said McElyea did discharge, in November and December, 1888,.
a number of men because of their friendship to and patronage of plaint-
iff; that said conduct of McElyea did alienate many of the friends of
plaintiff, whereby plaintiff lost much trade.

That said McElyea did, about the 1st day of November, 1888, in Har-
ris County, Texas, and at many other times and places, both before and
after said day and date, instruct his section foremen of said division of
defendant's road to discharge and refuse employment to any one known
to patronize and deal with plaintiff.

That in November and December, 1888, employment was and still is

scarce and difficult to obtain for common laborers; that influenced by the aforesaid conduct and threats of said McElyea, many of plaintiff's patrons left him, and many others were deterred and prevented from patronizing him.

That the defendant did know and was fully informed of, about, and concerning the conduct of its servants and officials in their boycott of and injury to plaintiff on and from the 1st day of June, 1888, or by due diligence might have known; that defendant was fully informed of said conduct of it servants about the 1st day of November, 1888.

That defendant was specially informed by plaintiff, about January 4, 1889, of the said boycott and conduct of its servants, and especially of McElyea and his conduct, and of plaintiff's injury therefrom, and relief demanded. But the defendant wholly refused plaintiff any redress, and fully ratified, confirmed, and made its own all the aforesaid acts and conduct of all its said servants, and more especially the wicked, malicious, and cruelly oppressive conduct of said McElyea.

That the aforesaid conduct of defendant has driven away custom and trade from plaintiff, and injured his business to the amount and value of $100 per month from June 1, 1888, to and until the present time.

That by reason of the aforesaid boycott by defendant against plaintiff, and by reason of the conduct and manner of defendant and its servants in the prosecution and continuance thereof, the plaintiff has been constantly annoyed, vexed, harassed, pained, wounded, and injured in his mind and feelings, to his great damage and injury, to-wit, in the sum of $5000.

That by the wicked, cruel, malicious, and oppressive conduct of defendant toward plaintiff as aforesaid, plaintiff has been injured in the further sum of $10,000 exemplary damages.

The defendant answered by general demurrer and general denial. The former was overruled, and a trial by jury followed, in which the plaintiff recovered a verdict for $100 actual and $300 exemplary damages.

The first assignment of error brings in question the correctness of the overruling of the general demurrer by the court below. Appellant contends that the petition fails to state a cause of action; because, first, no conspiracy was alleged; second, under the facts alleged, appellant had the right "to prohibit its employes or servants from attending any place of resort, such as a saloon and boarding house combined, under penalty of being discharged," and therefore did no wrong to appellee in issuing the order; third, the business alleged to have been injured was not averred to have been lawful; and fourth, there was no allegation that prior to the alleged wrongful acts of appellant appellee enjoyed the custom for the loss of which recovery is sought, and that he lost it through such wrongful act.

1. The first point seems to be, that the term "boycott" imports a conspiracy, and that the use of that term rendered it necessary for the pleader to show that a conspiracy existed. Whether or not this word has acquired, in modern usage, a meaning sufficiently definite for a court to take notice of when used in pleading, without explanation, is a question not very material to this case. (See a discussion of the point in cases referred to in 2 American and English Encyclopedia of Law, 512.) The term, so far as its import is developed, does not seem very applicable to the transaction alleged in the petition. But the legal characteristics of the cause of action are to be determined from the act alleged, and not from the name by which the pleader calls it. If that act is in law such as to give rise to a cause of action, the naming of it does not alter its character. The objection to the petition, that it does not allege a conspiracy, is not well taken, if the act charged against appellant was a legal wrong to appellee, for which he may maintain an action. The act might be committed as well by one as by many.

It is held in the case of Delz v. Norman, 80 Texas, 403, that a mere conspiracy is not actionable unless the act done thereby would be actionable if done by one singly. Whether this is true as broadly as it is stated or not (Bishop on Noncontract Law, section 357, et seq.), it can not be doubted that an injury to one's trade which will subject the guilty party to liability for damages resulting therefrom may be inflicted without a conspiracy. This brings us to the second objection.

2. Did appellant have the right to prohibit its servants from patronizing appellee's hotel and saloon? If in issuing the order or threat it only exercised a legal right, it may be admitted that appellee can not complain, though it resulted in loss to him, whatever may have been the motive with which the act was done. If appellant would have had the right to discharge its servants for doing the forbidden things, then it must follow that it could lawfully notify them that it would exercise it.

It had the same right to discharge its servants as all masters have under similar conditions. This right was not to dismiss the servants arbitrarily or capriciously, but for reasonable causes only. Were the acts, the doing of which appellant declared to its servants should be the cause of their discharge, such as would justify the action which was threatened?

The allegation is, that the employes were threatened with discharge if they "in any way patronized plaintiff, either by eating at his house or drinking at his bar." We think it too plain, that, as thus stated, there would have been no just ground for discharging the servants for doing what they were thus forbidden to do. This is charged to have been done maliciously, with intent to injure plaintiff.

The employes, presumably, had the right to eat and drink where they chose, so long as they violated no contract with their employer and performed their service well, and the malicious use of such moral coercion

upon them by the appellant as this petition alleges, for the purpose of injuring appellee, was wrongful, and made appellant liable for such damages as was thereby inflicted.

Appellant did not have the right to intentionally induce others to abstain from patronizing appellee, except for a legitimate purpose. Delz v. Norman, supra. According to the allegations, it did, by threats of unlawful discharge, cause its servants to withdraw their patronage, with intent to injure appellee.

This was not the exercise of a legal right, as contended, and the second proposition of appellant can not be sustained.

What we have said applies only to the rights of the master with reference to servants already in his employ. It is proper to say in regard to the alleged notice, that appellant would not take into its service any who might patronize appellee, that appellant had the right to determine for itself whom it would thereafter employ, and the reasons upon which it might act concerned no one but itself. Bish. Noncon. Law, sec. 144; Heywood v. Tilson, 75 Me., 225.

To what extent a master may exercise his influence with his employes, to promote their welfare, as well as to protect his own interests which are dependent upon their action, is not involved in the decision of this demurrer. The petition excludes the idea that the action complained of was taken for any legitimate purpose.

3. It was not necessary that the petition should allege that the business was lawful. The keeping of a hotel is, per se, a lawful business. The sale of liquor may become so by a compliance with the law regulating it. The law would presume that appellee was conducting his business lawfully. He was not required to anticipate a charge that he was violating the law, and to negative it by affirmative allegations.

4. The fourth proposition is met by the petition, which does show that appellee lost the custom of employes by reason of appellant's conduct, sufficiently at least to meet a general demurrer. Our conclusion therefore is, that the demurrer was properly overruled.

The ruling of the court in sustaining objection to the question asked by appellant of the witness Reordan, as stated in the third assignment, can not be revised, because the bill of exceptions does not state what the answer would have been. Under a general denial we do not think appellant could interpose the defense that plaintiff's business was unlawful. If it desired to make such a defense it should have pleaded it.

The appellant requested the following special charge, which was refused: "If you believe from the evidence that the defendant company, or its agents, did instruct its employes not to patronize the plaintiff's hotel and saloon, but did so to prevent troublesome litigation with plaintiff, or interference with their customs or regulations with their employes, but

not for the purpose of injury to plaintiff or his business, you will find for the defendant." We think this was rightly refused. Appellant might doubtless adopt appropriate measures with its employes, to prevent troublesome litigation with plaintiff, but it could not interfere with his legitimate business in order to do so. How it was nececessary to forbid patronage of that business in order to prevent litigation is not made to appear. It is shown that some of the employes in trading with appellee had transferred to him their papers, by which their right to receive wages from appellant was in some way evidenced, and that harassing suits had been brought by appellee from time to time upon such claims. Had such assignments alone been forbidden, upon penalty of discharge to the employes, a different question would be before us. Such is not the case.

There is no assignment which questions the sufficiency of the evidence to sustain the verdict, except the seventh, and that is too general to raise any question concerning the finding of the jury, save the allowance of exemplary damages. We have considered the evidence bearing upon this point, and conclude as a fact that the act of appellant was not done maliciously, nor with reckless or wanton disregard of appellee's rights; and that therefore the verdict for exemplary damages is not sustained. There are in the record two bills of exception, complaining of language used by appellee's counsel in addressing the jury. As to the first, it is shown that the court checked and rebuked the counsel and properly instructed the jury. In the other instance counsel was permitted to state to the jury that the reason appellee had not brought forward more of the employes of appellant who had been discharged for patronizing appellee or had withheld their custom from him, was that they had been discharged by the defendant, and had gone like migratory birds and could not be found by plaintiff. Objections made by appellant's counsel to this were overruled, the court stating in explanation of the bill of exceptions that there was evidence that the employes " were ever transient, changing continually." Such evidence is not found in the statement of facts. There was no evidence that defendant had discharged its employes, nor that plaintiff could not have found them, and the statement ought not to have been allowed. The fact stated was not one calculated to arouse passion or prejudice, and as the verdict is not attacked as not being supported by the evidence as to actual damages, in view of the disposition we will make of the case, it will not be necessary to notice this error further than to condemn it.

If appellee will within ten days file in this court a remitter of the exemplary damages ($300) the judgment will be affirmed, otherwise it will be reversed and remanded.

Delivered January 26, 1893.