MRS. E. J. HUTTON *v.* H. E. WATTERS *et al.*

(*Jackson.*   April Term, 1915.)

1. **TORTS.   Injury to business.   Liability.**

Plaintiff's petition alleged that she operated a boarding house near a school of which the defendant was president; that the defendant, having disagreed with one boarder at the plaintiff's house, demanded his ejection therefrom and was refused; that he, with others, then attempted to, and did, destroy the plaintiff's business, by threats against students who boarded with the plaintiff, by deterring new arrivals from going to the plaintiff's house, and by other means; that the plaintiff was of good character, and operated a reputable house; and that the defendants acted from ill will, and not by reason of business rivalry or competition. *Held*, that the declaration was not demurrable, the facts showing a cause of action, even though the act itself was lawful, if the defendant was actuated by malice and destroyed the plaintiff's business without reasonable advantage to himself, since every person has the right to conduct a lawful business and to have that right enforced or the wrong redressed if the right is infringed upon. (*Post, pp.* 530-544.)

Cases cited and approved:   West Va. Transportation Co. v. Standard Oil Co., 50 W. Va., 611; Huskie v. Griffin, 75 N. H., 345; Dunshee v. Standard Oil Co., 152 Iowa, 623; Gott v. Berea College, 156 Ky., 376; Mogul S. S. Co. v. McGregor, L. R., 23 Q. B., Div., 598; Keeble v. Hickeringill, 11 East, 574; Carrington v. Taylor, 11 East, 571; International & G. N. Ry. Co. v. Greenwood, 2 Tex. Civ. App., 76; Graham v. St. Charles Street R. R. Co., 47 La. Ann., 214; Wesley v. Native Lumber Co., 97 Miss., 814; Globe & R. F. Ins. Co. v. Fireman's Fund Ins. Co., 97 Miss., 148; Ertz v. Produce Exchange, 79 Minn., 145; Robinson v. Texas Pine Land Association (Tex. Civ. App.), 40 S. W., 843; Lewis v. Huie-Hodges Lumber Co., 121 La., 658; Delz v. Winfree, 80 Tex., 400; Tarleton v. McGawley, Peak,

Hutton v. Watters.

N. P. C., 270; Clifford v. Brandon, 2 Camp., 358; Gregory v. Brunswick, 6 Man. & G., 205; Garret v. Taylor, Cro. Jac., 567; Bowen v. Hall, 6 Q. B. D., 333; Lumley v. Gye, 2 E. & B., 216.

Cases cited and distinguished: Tuttle v. Buck, 107 Minn., 145; Boggs v. Duncan-Schell Furniture Co., 163 Iowa, 106; Payne v. Railroad, 81 Tenn., 507.

2. **TORTS.  Injury to business.**

In an action for wrongful injury to plaintiff's business, the question of whether the acts complained of were within the rights of the defendant as being in the due course of competition \for his own advantage, or actuated solely by malice and unjustifiable, must be determined upon the facts in each case, and no rule can be laid down for its determination.  (*Post, pp.* 530-544.)

3. **TORTS.  "Malicious" act.  Justification.**

A "malicious" act is one injurious to another, intentional, and without legal justification, and is unlawful and actionable, but if an act, otherwise lawful, has a reasonable tendency to promote ends advantageous to the doer, malice in the doing does not bring it within the rule.  (*Post, pp.* 530-544.)

---

FROM WEAKLEY.

---

Appeal from the Circuit Court of Weakley County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— Jos. E. Jones, Judge.

L. E. Holladay, for appellants.

A. B. Adams and R. E. Maiden, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The averments of the declaration are, in substance, as follows:

One of the defendants, the Hall-Moody Institute, is a chartered institution of learning at Martin, Tennessee. Defendant Watters is its president, and the ten other defendants are its "directors, trustees, teachers, and advisors." The school has a large out of town patronage, and it is essential that boarding houses be conducted to accommodate these students, as well as some of the teachers. Mrs. Hutton is a widow who makes a business of keeping boarders. In June, 1910, she opened a business of the kind in Martin. During that year one James Wilson became one of her customers. Some students did the same. Defendants offered no objection until after a personal difficulty had occurred between Wilson and defendant Watters. The latter then demanded that plaintiff dismiss Wilson. She refused. Because of this refusal Watters became her enemy, and the other defendants ranged themselves with him, and all formed a conspiracy to drive her out of business. Thereupon, from time to time, during the years 1911, 1912, and 1913, as soon as plaintiff secured student boarders, or teacher boarders, the defendants, in prosecution of this purpose, caused these, plaintiff's customers, to leave her house, by threats to deprive them of the benefits of the school, or of their places, if they should refuse. By similar threats other persons were prevented from taking board with plaintiff; the defendants even going to the length of meeting trains and watching for new arrivals and deterring these from

132Tenn.34

patronizing her house. The plaintiff is a person of good moral character, stands well in the community, and has always conducted a reputable establishment. The defendants, in setting on foot and prosecuting the conspiracy referred to, were not influenced by any motive of business rivalry, or competition, but acted as they did merely because of a feeling of ill will induced by plaintiff's refusal to turn James Wilson out of her house, and her refusal to permit Watters to dictate the price which she charged her customers.

The conspiracy was successful, and destroyed, or practically destroyed, plaintiff's business.

The damages are laid at $5,000.

The defendants interposed a demurrer purporting numerous grounds, but all resolvable into the single objection that the declaration stated no cause of action.

The trial judge sustained the demurrer, but the court of civil appeals reversed that judgment, and the case then came to this court under the writ of *certiorari.*

We think the declaration stated a good cause of action.

Every one has the right to establish and conduct a lawful business, and is entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. Such right existing, the commission of an actionable wrong is established against any one who is shown to have intentionally interfered with it, without justifiable cause or excuse. To establish justification, it must be made to appear,

not only that the act complained of was otherwise law-
ful and performed in a lawful manner, but likewise
that it had some real tendency to effect a reasonable
advantage to the doer of it.   But in order to determine
the reasonableness of such act it must be considered
from the standpoint of both parties, with a view to as-
certaining whether the defendant has acted merely in
the due exercise of his own right to carry on business
for himself.   If this be found in his favor, while he
may have done the plaintiff harm, he cannot be ad-
judged to have done an injury in the legal sense; that
is, a wrongful act in violation of the legal right of an-
other.   Whether the defendant was in the reasonable
exercise of his own similar rights must, from the view-
point stated, be determined by the court, or court and
jury in each case as it arises, on the law and the evi-
dence.   A defendant cannot excuse himself by the mere
fact that the means used were his own, his property, his
servants.   He cannot, with justification in law, use his
property, or anythng else that appertains to him, in
such manner as to wantonly injure another.   Still, it
has been decided, by the weight of authority, that if the
act complained of, being otherwise lawful in itself, had
a reasonable tendency to promote ends advantageous
to the defendant in the conduct of his own business, it
cannot be correctly adjudged an illegal agency or op-
eration by the fact that the doer of it was moved also
by a feeling of ill will, or personal malice, towards the
person against whom his act was directed (*West Va.
Transportation Co.* v. *Standard Oil Co.,* 50 W. Va., 611,

40 S. E., 591, 56 L. R. A., 804, 88 Am. St. Rep., 895; 62
L. R. A., 673, note; L. R. A., 1915B, 1180, note); but if
the act is otherwise wrongful, such personal malice
may aggravate the damages. (Cooley on Torts [2d
Ed.], pp. 832, 836).

In short, if an act be hurtful to another; intentional,
and without legal justification, it is malicious in the
true legal sense (19 Am. & Eng. Ency. of Law [2d
Ed.], 623, note 4), therefore unlawful, and is action-
able.

Of course it is wholly impossible to formulate a de-
scription which will cover all acts which are intention-
ally hurtful to another, and at the same time justifi-
able in law. As already said, each case, as it arises,
must be determined on its own facts, and in the light
of the principles stated. It is left in each case for the
court, or the court and jury, according to the way
in which the controversy is presented, to say whether
the defendant's conduct complained of was, in view of
all the circumstances, a reasonable and proper exercise
of his right of self-protection, or self-advancement,
both as to the substance of it, and the method of it.
*Huskie* v. *Griffin,* 75 N. H., 345, 74 Atl., 595, 27 L. R.
A. (N. S.), 966, 139 Am. St. Rep., 718; *Dunshee* v.
*Standard Oil Co.,* 152 Iowa, 623, 132 N. W., 371, 36 L.
R. A. (N. S.), 263; *Gott* v. *Berea College,* 156 Ky., 376,
161 S. W., 204, 51 L. R. A. (N. S.), 17; *Mogul S. S. Co.*
v. *McGregor,* L. R., 23 Q. B. Div., 598; Mod. Am. Law,
vol. 2, pp. 327-336.

In the latter authority it is said, quoting 28 Law Quarterly Review, 67:

"The theory of justification consists in a proper adjustment and compromise between the two competing rights that are equally protected in law. It has been already observed that the enjoyment by a particular individual of the right of freedom, as to how he should bestow his capital and labor, is not absolute, but qualified by the existence of equal rights in the other members, to such an extent as to be made compatible with an equally free enjoyment of these rights by the rest of the community. In fact, ever case of justification reduces itself to the question how far the rights of an individual can be so circumscribed in accordance with a general law of freedom as to leave an equal scope for the free enjoyment of the competing rights of his fellow men."

"But," said Lord Justice Bowen, in *Mogul S. S. Co. v. McGregor,* supra, "such legal justification would not exist when the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own right." The good sense of the tribunal which had to decide would have to analyze the circumstances and discover on which side of the line each case fell. But if the real object was to enjoy what was one's own, or to acquire for one's self some advantage in one's property or trade, and what was done was done honestly, peaceably, and without any of the illegal acts above referred to, it could not, in my opinion, properly be said that

it was done without just cause or excuse." Id. 618, 619.

Although, as indicated, the defense of justification arising in such controversies is a question for decision in each case, as concreted in its own peculiar facts, yet the precedents shed much light in the way of illustrating the principles involved.

In an early English case, decided during the reign of Queen Anne (*Keeble* v. *Hickeringill,* 11 East, 574), reported in full as a note to *Carrington* v. *Taylor,* 11 East, 571, 574, 577, it appeared that the plaintiff had prepared a decoy pond for the purpose of taking wild fowl. The defendant knowing this, and purposing to injure the plaintiff by frightening away the wild fowl accustomed to resort to the pond, discharged guns on his own land, and the wild fowl were thus driven away. It was held that an action on the case would lie for the damages thus occasioned. Holt, Chief Justice, said that if the defendant had set up another decoy on his own ground near the plaintiff's, and that had spoiled the custom of the latter, no action would lie, because he had as much liberty to make and use a decoy as the plaintiff; but, when, without benefit to himself, real or intended, he successfully committed the act intending to accomplish the injury to the plaintiff, it was actionable.

In *International & G. N. Ry. Co.* v. *Greenwood,* 2 Tex. Civ. App., 76, 21 S. W., 559, it was held that a railway company was liable to the proprietor of a boarding house for having deprived him of the patron-

Hutton v. Watters.

age of its employees by threatening to discharge them if they patronized him. It did not appear that any interest of the railway company was served, or any benefit to it effected, by such order.

In *Graham* v. *St. Charles Street R. R. Co.*, 47 La. Ann., 214, 16 South., 806, 27 L. R. A., 416, 49 Am. St. Rep., 366, it appeared that the foreman of the railway company, without any purpose of advancing its interests, threatened to discharge its servants if they continued to trade with plaintiff, who was conducting a grocery store near the stables and buildings of the company, in New Orleans, and by this order caused injury to the plaintiff. This conduct was held unjustifiable and therefore actionable.

In *Wesley* v. *Native Lumber Co.*, 97 Miss., 814, 53 South, 346, Ann. Cas., 1912D, 796, it was held that an action for damages would lie against a corporation where it had maliciously injured a retail dealer by threatening to discharge any of its employees who should deal with him. To the same effect is *Globe & R. F. Ins. Co.* v. *Fireman's Fund Ins. Co.*, 97 Miss., 148, 52 South., 454, 29 L. R. A. (N. S.), 869.

In *Ertz* v. *Produce Exchange,* 79 Minn., 145, 81 N. W., 737, 48 L. R. A., 90, 79 Am. St. Rep., 433, it was held that a conspiracy by several to refuse to deal with a dealer in farm produce, having a profitable business, and to induce others to do likewise, it not appearing that such interference of the persons so conspiring was to serve any legitimate interests of their own, but that it was done merely to injure him, and that the conspir-

acy had been carried into execution, whereby the plaintiff's business was ruined, furnished a cause of action in favor of the injured party.

On the other hand, it was held in *Robison* v. *Texas Pine Land Association* (Tex. Civ. App.), 40 S. W., 843, that an employer who issued store checks redeemable in merchandise was not liable to an action by another storekeeper for threatening to discharge its employees if they traded with him, and for refusing to take up any checks which had passed through the hands of plaintiff. The ground of the decision was that the plaintiff had no superior right to trade with defendant's employees; that defendant had the right to appropriate to itself all of the customers it could command, provided it did not violate a definite legal right of the plaintiff. The point of view is brought out more clearly in *Lewis* v. *Huie-Hodges Lumber Co.*, 121 La., 658, 46 South., 685. The defendant was the employer of a large number of people, and in connection with its business carried on a general mercantile store for the purpose of selling goods to its employees and others. It notified its employees that if they bought goods of the plaintiff they would be discharged. The court held that defendant's act was justifiable as a means of safe-guarding its own interests.

An interesting case is *Delz* v. *Winfree*. The controversy was first presented on a petition stating, in substance, that the defendants, members of two different firms engaged in buying and slaughtering live animals fit to be slaughtered and sold as fresh butcher's meat,

Hutton v. Watters.

conspired with each other, and with a butcher, not to sell to the petitioner for cash live animals. or slaughtered meat for the prosecution of his business, and that in pursuance of this conspiracy they refused to sell him, although offered their own price in money, by reason of which unlawful combination and malicious interference the petitioner was compelled to close his business, and so had been damaged. This was held to state a cause of action. 80 Tex., 400, 16 S. W., 111. But when the case came on for trial on the issues made, it appeared that the refusal was based on the fact that the petitioner was indebted to the defendants, and they had refused to sell him because, he being insolvent, they deemed it prudent to have no further dealings with him until he had paid them what was due them. There were verdict and judgment in favor of the defendants, and on appeal the judgment of the trial court was sustained, the court holding that the reason assigned and proven justified the act complained of. 6 Tex. Civ. App., 11, 25 S. W., 50.

But in *Dunshee v. Standard Oil Co.*, 152 Iowa, 625, 618 132 N. W., 371, 36 L. R. A. (N. S.), 263, it was held that the principle of reasonable self-protection, or self-advancement, did not justify the action taken. There it appeared that the defendant, a wholesaler, when its customer in a particular city began to purchase a portion of his stock from a rival concern, entered into a retail business solely for the purpose of driving him out of business, and when this had been accomplished

ceased its said retail business. It was held that these facts made out a case for damages.

So, the case of *Tuttle* v. *Buck,* 107 Minn., 145, 119 N. W., 946, 22 L. R. A. (N. S.), 599, 131 Am. St. Rep., 446, 16 Ann. Cas., 807. Here it appeared that the plaintiff, a barber, had for several years carried on a profitable business, and that the defendant, a wealthy banker, possessed of great influence, set up an opposition shop, solely for the purpose of injuring the plaintiff, and without profit to himself, employing and paying barbers to conduct such opposition business, whereby plaintiff's business was ruined. It was held that these facts made a case for relief. The court said:

"To divert to one's self the customers of a business rival by the offer of goods at lower prices is in general a legitimate mode of serving one's own interest, and justifiable as fair competition. But when a man starts an opposition place of business, not for the sake of profit to himself, but regardless of loss to himself, and for the sole purpose of driving his competitor out of business, and with the intention of himself retiring upon the accomplishment of his malevolent purpose, he is guilty of a wanton and an actionable tort."

To the same effect is *Boggs* v. *Duncan-Schell Furniture Co.,* 163 Iowa, 106, 143 N. W., 482, L. R. A., 1915B, 1196, quoting and approving *Tuttle* v. *Buck.*

The illegal acts excluded by general reference in the excerpt we have made from *Mogul S. S. Co.* v. *McGregor,* supra, are thus particularized by the Lord Justice in an earlier part of his opinion:

"No man, whether trader or not, can, however, justify damaging another in his commercial business by fraud or misrepresentation. Intimidation, obstruction, and molestation are forbidden. So is the intentional procurement of a violation of individual rights, contractual or other, assuming always that there is no just cause for it. The intentional driving away of customers by show of violence (*Tarleton* v. *McGawley,* Peak, N. P. C., 270); the obstruction of actors on the stage by preconcerted hissing (*Clifford* v. *Brandon,* 2 Camp., 358; *Gregory* v. *Brunswick,* 6 Man. & G., 205); the disturbance of wild fowl in decoys by the firing of guns (*Carrington* v. *Taylor,* 11 East, 571, and *Keeble* v. *Hickeringill,* 11 East, 574, n.); the impeding or threatening servants or workmen (*Garret* v. *Taylor,* Cro. Jac., 567); the inducing persons under personal contracts to break their contracts (*Bowen* v. *Hall,* 6 Q. B. D., 333; *Lumley* v. *Gye,* 2 E. & B., 216)—all are instances of such forbidden acts."

Applying the principles stated to the case before us, we are of the opinion that the defendants acted without legal excuse. They were not justified by plaintiff's refusal to dismiss her boarder, James Wilson, nor by her refusal to arrange her rates according to the directions of the defendant Watters. If the prices charged were pleasing to her patrons, no other person had any right to complain. No such defense appears as that set out in *Gott* v. *Berea College,* supra, based on the welfare of the students, or the right of the college to make rules for their control.

We are referred to the case of *Payne* v. *Railroad,* 13 Lea (81 Tenn.), 507, 49 Am. Rep., 666, as an authority in opposition to the views herein stated. While that case was ably reasoned by the learned special judge who wrote the majority opinion, and is not without support in the authorities, we are constrained to hold that it was erroneously decided. We are better satisfied with the dissenting opinion. It is certain that the prevailing opinion in that case is out of harmony with the great weight of authority as now understood. Moreover, we have long been dissatisfied with that opinion, believing that it was fundamentally wrong. The real question was not, as assumed in that opinion, whether a master had the right to discharge his servants without liability to account to a third party for his reasons, good or bad, but it was whether the defendant had the right to injure the business of the plaintiff without any purpose to effect an advantage or benefit to itself. The plaintiff in that case could not lawfully question defendant's authority over its servants, but he could question the defendant's exercise of that authority solely for the purpose of destroying his business, the infliction of an injury on his business without legal justification, and hence an act malicious in law.

It was said in that opinion that the act was not malicious in law, because although it inflicted a wrong on the plaintiff such wrong was not a legal wrong, but only a moral wrong, therefore, not an unlawful act. That position assumed the whole matter in contro-

Hutton v. Watters.

versy. We think the learned special judge confounded the right of a master to discharge his servants subject to legal accountability to no one save the servants themselves for breach of contract, with the supposed right to interfere with the lawful business of another by threats made against those servants. It is said, if the master had the right to discharge his servants, he necessarily had the right to threaten to discharge them. The conclusion does not logically follow. He had no right to condition his threat, or the execution of his threat, on an injury to be inflicted, under his orders, by the servants on the personal business of another. The defendant could not lawfully threaten to discharge his servants if they should fail to assault and beat the plaintiff. Why? Because to assault and beat one who is doing no harm is unlawful. So, it is unlawful to interfere with another's business without a good excuse. The means cannot justify the act, or turn a wrong into a right. The opinion referred to is based on the hypothesis that the means used can effect this metamorphosis, if that means be the exercise of the power which the master has over his servants through their fear of losing their places, and hence their means of livelihood, and no violence be done. It cannot be that a master has power, within the law, to direct his servants where to buy for themselves, or where not to buy, when no rightful good to himself can be effected through such direction. That would be to sanction tyranny, the enslavement of servants, and the subversion of the law itself. The law wills freedom, save

where a man is bound by its own behests, or has, through contract, submitted his duty to the will of another. Where one employs the power which the law gives him by contract for purposes other than those of the contract, to the end that he may enslave the will of the person who has contracted with him, he does wrong, and if injury to another occurs thereby, he does a legal wrong, and cannot shelter himself behind the contract which he has diverted from its purposes, and so prostituted.

It is said in the opinion we are criticizing that a man has the legal right to buy where he chooses and to sell to whom he will. This is true; but we think the point had no fitting part in the solution of the question then before the court. The right of a man to dispose of his own custom does not include the power, in law, to influence or control the custom of other people to the injury or destruction of the business of third parties. Such influence one can lawfully exercise only when it is used for the building up of his own business or the advancement of his own lawful interests. The true theory of the matter was fully discerned by Mr. Justice Freeman, and expressed by him in his masterly dissenting opinion filed in the cause in these words:

"The rule I have maintained is in strict accord with a maxim of the law, so well founded in reason as to need no argument or authority to support it; that is, that a man must so use his own as not to do an injury to others. That this means he shall so enjoy his legal right, as not to do wrong to the legal rights of

another, I freely concede. ʻBut here is a use of his legal right to discharge employees, for the direct purpose and with no other, and for no other reason except to prevent their trading with a party legitimately entitled by his location and the character of his business to such trade./ Here is the use of a legal right, to deprive the other of that which is his legal right, to wit, the property he has in the good will of his business, which consists in his business character for integrity and fair dealing, his convenience of location to his customers, the character of goods he sells, and fairness of price for which they are sold, and the like. All these make up as elements of that property now well recognized in our law as the good will of a business. For a party who has the power, to use that power, to destroy or injure the value of this property, in the exercise of the right, not for any reason of advantage to himself, but solely to injure another, ought not to be permitted by an enlightened system of jurisprudence in this country.

"It is argued that a man ought to have the right to say where his employees shall trade. I do not recognize any such right. A father may well control his family in this, but an employer ought to have no such right conceded to him. In the case in hand and like cases under the rule we have maintained, the party may always show by way of defense that he has had reason for what he has done; that the trader was unworthy of patronage; that he debauched the employee, or sold, for instance, unsound food, or any other cause,

that affected his employee's usefulness to him, or jus-
tified the withdrawal of custom from him.   This is not
in any way to interfere with the legal right to discharge
an employee for good cause, or without any reason as-
signed if the contract justifies it, but only that he shall
not do this solely for the purpose of injury to another,
or hold a threat over the employee *in terrorem* to fet-
ter the freedom of the employee, and for the purpose of
injuring an obnoxious party.

"Such conduct is not justifiable in morals, and ought
not to be in law, and when the injury is done as averred
in this case, the party should respond in damages.   The
principle will not interfere with any proper use of the
legal rights of the employer, an improper and injurious
use is all it forbids." 13 Lea (81 Tenn.), 541, 542, 49
Am. Rep., 666.

All of the foregoing excerpt is in accord with the
views now held by the court (including as matter of
justification acts for the lawful advancement of the
master's own interest), and in harmony with the best
judicial thought of the present time, and in our judg-
ment should have controlled the decision of the cause.

We overrule *Payne v. Railroad Co.,* in so far as it is
in conflict with the present opinion.

The judgment of the court of civil appeals in the
case before us, reversing that of the trial court, must,
on the grounds herein stated, be affirmed, and the cause
remanded for issue and trial.