## PEORIA LIFE INS. CO. v. POYNOR.
(No. 545.)

Court of Civil Appeals of Texas. Waco.
June 30, 1927.

Rehearing Denied Sept. 15, 1927.

1. **Insurance** ⊖⟹84(6)—**Whether agent's acceptance and recording in books, at company's request, of lower commission was sufficient to lead company to believe he acquiesced therein held for jury.**

In action by insurance agent for his commission, whether agent's acceptance and recording, at company's request, in books of company kept in his office, of a lower commission than he claimed was sufficient to lead the company to believe he acquiesced therein *held* for jury.

2. **Estoppel** ⊖⟹60—**Estoppel cannot arise as matter of law, in absence of certainty to every intent, facts alleged not being taken by inference.**

Before an estoppel can arise as a matter of law, there must be a certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference.

3. **Estoppel** ⊖⟹78(1)—**Act susceptible of two constructions, one of which is consistent with right asserted by party sought to be estopped, forms no estoppel.**

In an action by an insurance agent for commissions in which the company set up estoppel, *held*, that where an act is susceptible of two constructions, one of which is consistent with the right asserted by the party sought to be estopped, it forms no estoppel.

4. **Estoppel** ⊖⟹78(1)—**Employer's belief, induced by agents, that latter acquiesced in smaller commission held not ground for estoppel to assert larger commission due, since by contract agent could not have been discharged, hence company was not injured by belief.**

Where, under the contract, the insurance company could not have discharged the agent even had they known he claimed a larger commission, the fact of their believing he acquiesced in the smaller commission *held* not ground for estoppel against agent's asserting a higher commission was due, since company could not have been injured by acceptance of smaller amount.

5. **Principal and agent** ⊖⟹81(4)—**Rule of employing company cannot abrogate express agreement as to agent's commission, though rule of company provides for lower commission and agent agreed to abide by rules.**

Where an agent's contract calls for stated commission and also binds the agent by all rules and regulations of the company, a rule providing lower commission cannot abrogate an express commission provision in the contract.

6. **Principal and agent** ⊖⟹81(4)—**Agent's vested rights under express contract cannot be changed by rules and regulations of principal.**

An employing company cannot by rules and regulations, present and future, change its agent's vested rights arising from an express contract.

7. **Customs and usages** ⊖⟹17 — **Insurance agent's right to commissions, being fixed by written contract, could not be changed by custom.**

Where an insurance agent's rights to commissions were fixed by written contract, his rights thereunder could not be changed nor impaired by custom.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by R. F. Poynor against the Peoria Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Trippet, Boggess & Sheehy, of Waco, for appellant.

R. H. Kingsbury and Lipscomb & Wise, all of Waco, for appellee.

STANFORD, J. Appellee, as plaintiff, filed this suit against appellant, alleging that about December 7, 1923, appellee and appellant entered into a written contract whereby appellee was to represent appellant as general manager for the state of Texas, and for such service appellee was to receive $300 per month and 75 per cent. of the first year's premiums collected in cash on all policies of insurance issued through his office. Appellee alleged his salary for December, 1925, had not been paid; he also sued for 50 per cent. of the double indemnity premiums on certain enumerated policies, amounting to $116.28, alleging that he was entitled to 75 per cent. of the total double indemnity premiums and had been paid only 25 per cent. leaving a balance due on same of $116.20; also, that he was entitled under the terms of his contract to 75 per cent. of the total first year's premiums on certain enumerated policies issued to substandard risks, and that the amount due him on these policies was $675.46, making a total amount due appellee of $1,091.74, on which appellant was entitled to a credit of $481.85, leaving a balance due appellee of $609.89. Appellant answered by general demurrer, general denial, and a cross-bill, alleging appellee was indebted to it in the sum of $152.40, for which it sought judgment. Appellant pleaded further that it was its custom in dealing with its agents to pay them only 25 per cent. on its double indemnity premiums and nothing on its substandard premiums, and that appellee knew said custom; and further, that the contract provided that appellee should be subject to the rules and regulations of the company, and that it was the rule of said company not to pay commissions on substandard premiums, and only 25 per cent. on double indemnity premiums; and further, that appellee acquiesced in appellant's construction of the contract and acted

on same, and is now estopped to contend otherwise, etc.

The only issue involved was whether appellee was entitled to 75 per cent. of the first year's premiums on double indemnity and substandard premiums, as contended by appellee, or 25 per cent. of the first year's premiums on double indemnity and nothing on substandard premiums, as contended by appellant. In response to special issues, the jury found, in substance:

"(1) That after the execution of the written contract, appellee and appellant did not enter into an oral contract whereby the appellee agreed to accept as commissions 25 per cent. of the double indemnity premiums and no part of the substandard premiums.

"(2) That appellee did not by and in the manner of making his reports to the company lead it to believe that he would not claim more than 25 per cent. of the premiums on double indemnity and no part of the substandard premiums.

"(3) That at the time appellee and appellant entered into the contract sued upon, it was not the appellant's custom to pay its agents only 25 per cent. on double indemnity premiums and no commissions on substandard premiums."

On these findings, and such other findings as the pleadings and evidence warranted, the court entered judgment for appellee, which judgment is here presented by appellant for review.

Under appellant's first three propositions it contends the court erred in failing to instruct a verdict in its favor because the undisputed evidence showed that appellee was estopped to recover the commissions sued for. The record discloses that by the term "double indemnity" is meant that, for extra premiums—in this case it was $2 per thousand dollars—the insurance company would pay double the amount of the policy in the event of accidental death. In this case appellee and his subagents wrote a number of policies carrying the double indemnity feature. Appellee contended that under his contract he was entitled to 75 per cent. of the total amount of the first year's premium on each of said policies. Appellant contended he was entitled to 75 per cent. of the regular premium and 25 per cent. of the extra amount paid to secure the double indemnity feature, and paid appellee accordingly, and appellee sought to and did recover herein the remaining 50 per cent. of the first year double indemnity premiums. A substandard policy, as disclosed by the record, is a policy issued where the assured has some impairment, such as overweight, etc., in which case an extra charge is made. Appellee contended he was entitled to 75 per cent. of the total amount of the first year's premium on such policies. Appellant contended he was not entitled to any commissions on said extra premium charges. It is evident from the record that the trial court found that the written con-

tract, as originally entered into between appellee and appellant, obligated appellant to pay appellee 75 per cent. of the total first year premiums paid on policies carrying the double indemnity or substandard features, as well as those that did not do so, and we think the written contract amply warranted such finding. So, the judgment should be affirmed unless we sustain some one of appellant's special defenses.

[1-3] Appellant contends the trial court should have held as a matter of law that appellee was estopped to recover the commissions sued for. The court treated same as a question of fact and submitted same to the jury, and the jury found, as stated above, on this issue in favor of appellee. Appellee testified:

"These substandard policies and double indemnity policies are included in the classification of ordinary life," etc.

And, further, he testified:

"At the time I made my contract with the company, in a conversation with Mr. Hays, we discussed the matter of premiums, and it was agreed that I was to receive the regular commission on the full premium, including both the double indemnity and substandard part thereof, which was to be as shown in the contract, 75 per cent."

When appellee reported on the first substandard policy written he deducted 75 per cent. of the total first year premium, but the company wrote in reply refusing to allow commissions on the substandard part of the premium, and instructed appellee to correct his report in this respect, and in reply to this letter appellee wrote appellant and, among other things, said:

"Relative to commissions on extra premiums, my contract and rate book make no mention of this; this will be thrashed out with the proper officials."

Appellee also testified:

"Yes; they wrote me they would not pay it (commissions on the extra premiums), and I discussed it with them too, and I told them I would have it some day and almost dared them to fire me."

Appellee testified further, in substance, that the books and records kept in his office belonged to appellant, and that he made said records and reports to show 25 per cent. commission on first year double indemnity premiums and no commissions on substandard premiums, because the company instructed him to so make them; that appellant never sent him a statement of his account during the time he worked for them. The contract provided, in effect, that it might be canceled by either party on 30 days' notice to the other party, and appellant contends that appellee, by and in the manner of making his reports to the company, led it to believe that he would not claim more than 25 per cent. of the pre-

miums on double indemnity and none on substandard premiums, and, had it not been so misled, it would have terminated said contract, etc., and so claims that appellee was estopped to claim the commissions sued for. We have not attempted to state all the evidence bearing upon the issue here involved, but we think clearly the evidence was sufficient to raise an issue of fact as to whether or not appellant was so misled, and that the trial court was correct in refusing to instruct for appellant on the issue of estoppel, and in submitting said issue to the jury; and we think the finding of the jury, to the effect that appellant was not so led to believe, is amply supported by the evidence. Before an estoppel can arise as a matter of law, there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with the right asserted by the party sought to be estopped, it forms no estoppel. 21 C. J. 1139, § 139. Appellee's reports to the company must be considered in connection with the correspondence which caused him to make them in that manner, and when so construed, it is obvious that his claim in this suit is not in contradiction of his former allegations or acts. Appellee never at any time conceded that appellant was right in its contention. On one occasion appellee wrote appellant that he would "thrash the matter out with the proper officials." On another occasion, when he took the matter up with the officials at the managers' convention, he testified:

"I told them I would have it some day and almost dared them to fire me." Fifth National Bank v. Iron City National Bank, 92 Tex. 436, 49 S. W. 368; Harwood v. Fort Worth Nat. Bank (Tex. Civ. App.) 205 S. W. 484; Fort Worth Nat. Bank v. Harwood (Tex. Com. App.) 229 S. W. 487; Lone Star Life Ins. Co. v. Pierce (Tex. Civ. App.) 200 S. W. 1104; 21 C. J. 1253, § 270; 21 C. J. 1139, § 139.

[4] We also think appellant's claim that it would have discharged appellee, had it known he was claiming the commissions in dispute, as applied to the facts of this case, is insufficient to support an estoppel, for the reason it fails to show the loss of any legal right, and fails to show any injury resulting from appellant's reliance on appellee's conduct if appellee is permitted to recover the commission alleged to be due him. Section 25 of the contract provides that it may be terminated by either party on giving 30 days' notice. Section 29 provides, in effect, that so long as appellee produced a certain amount of business each year section 25 should be inoperative. Appellee did produce the required volume of business the first year to suspend the operation of section 25. Under the only reasonable and practical construction of these two sections as applied to the volume of business produced by appellee, at no time during appellee's service did appellant have the right to discharge him. The court found the written contract sued upon obligated appellant to pay the commissions sued for. The jury found, in effect, that the parties after the execution of the written contract did not enter into any oral contract changing same. If appellant had discharged appellee because he was claiming the commissions sued for—that which was due him under the written contract—such dismissal would have been wrongful. The above being true, the refusal of the claimed estoppel could not deprive appellant of any legal or equitable right. To allow the estoppel on the grounds claimed and under the facts of this case, would be not to prevent any injury to appellant, but to enable it to reap a profit—to escape a legal liability. Llano Granite Co. v. Hollinger (Tex. Com. App.) 212 S. W. 151; McLemore v. Bickerstaff (Tex. Civ. App.) 179 S. W. 536; Oram v. Mayor of New Brunswick, 64 N. J. Law, 19, 44 A. 883; 21 C. J. 1135, § 136. We overrule all assignments raising the questions here discussed.

[5, 6] Under other assignments, appellant contends that the contract between appellant and appellee provided that appellee should at all times be subject to the rules and regulations, present and future, of appellant; and that it was a rule of appellant, in force at the time the contract was made, that appellant paid no commissions on substandard premiums and only 25 per cent. on double indemnity premiums. As stated above, the court found the written contract obligated appellant to pay appellee 75 per cent. commissions on first year premiums, including extra premiums on double indemnity and substandard premiums. If it be true that appellee knew that his contract required him to abide by the rules and regulations, present and future, of the company, this would not be notice to him that appellant would attempt to construe said clause so as to abrogate the express provisions of his written contract as to the commissions it obligated itself to pay him. In fact, this cannot be done. Appellant cannot by rules and regulations, present and future, change vested rights under an express contract. If appellant intended the clause in question to control the matter of commissions, then when it executed the written contract with appellee covering the same matter, said contract effectually superseded and set aside said clause. But evidently, we think, the clause in question here was not intended to in any manner control the amount of commissions paid agents, but was intended to direct the manner and details of the work and the methods, etc., of its agents in doing same. Kramer v. Wolf Cigar Stores, 99 Tex. 597, 91

S. W. 775; International & G. N. Ry. Co. v. Greenwood, 2 Tex. Civ. App. 76, 21 S. W. 559; 39 C. J. 132, § 173. These assignments are overruled.

[7] Under other assignments appellant contends that the finding of the jury, to the effect that, at the time of the execution of the contract between appellant and appellee, it was not the custom of appellee to pay its agents only 25 per cent. on the first year premitms for double indemnity and nothing for substandard premiums, is not supported by the evidence. The contract between appellant and appellee was dated December 7, 1923. Three witnesses testified relative to the issue here involved, all of them testifying, in effect, that appellant did not begin to do a substandard business until in January, 1924. Said finding of the jury is supported by the evidence. However, we regard this question as unimportant, in that, if there had been such custom, there is no evidence that appellee had any knowledge of such custom, if it did exist, and he could not be bound by a custom of which he had no knowledge. Again, appellee's rights were fixed by the written contract, clearly expressed, and his rights under said contract could not be changed nor impaired by a custom. Chicago, R. I. & G. Ry. Co. v. Pavillard (Tex. Civ. App.) 187 S. W. 1000; Greer v. First Nat. Bank (Tex. Civ. App.) 47 S. W. 1045; 17 C. J. 508, § 77.

We have examined all of appellant's assignments and find no reversible error. The judgment is affirmed.